**UNITED STATES of America,**
**Plaintiff-Respondent,**

**v.**

**Eve B. PAHMER, Defendant-Appellee,**
**Eva Pahmer, Defendant-Appellant.**

**No. 41, Docket 24124.**

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1956.

Decided Nov. 1, 1956.

Harold W. Harrison, Great Neck, N. Y., for defendant-appellant.

Chester T. Lane, New York City (Beer, Richards, Lane, Haller & Buttenwieser, and Helen L. Buttenwieser, New York City, on the brief), for defendant-appellee.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal from a judgment entered in an interpleader action brought by the United States impleading, as rival claimants to the proceeds of a National Life Insurance policy issued to a World War II veteran, the veteran's widow, whose designation as beneficiary had been duly recorded in the records of the Veterans' Administration, and the veteran's mother who claimed to be the beneficiary by virtue of a writing in the form of a holographic will not brought to the attention of the Veterans' Administration until after the veteran's death. We shall hereafter refer to the claimants as the "wife" and the "mother." The facts not being in dispute, each claimant filed motion for summary judgment. The wife's motion was granted and the mother's was denied on findings and an opinion published in D.C., 136 F.Supp. 762. From the resulting judgment the mother appealed.

The underlying facts are not in dispute. They were succinctly stated in the findings of the trial judge which are set forth in the margin.[1] There was no evidence that the "will" quoted in finding 5, was ever admitted to probate. However, the complete instrument, which concededly was wholly in the insured's handwriting, is reproduced in the wife's appendix and shows that although signed by the insured it was not attested by any subscribing witnesses. In his opinion, the trial judge commented on "the fact

[1]. "The Facts

"The following facts appear to exist without substantial controversy:

"1. Marcel Pahmer, who had been in the military service, became insured under a policy of National Life Insurance, effective November 1, 1943, in the principal amount of $10,000.

"2. The insured named his wife Eve B Pahmer as beneficiary, and his minor son John as contingent beneficiary.

"3. Several years prior to his death, the insured and hs wife had become estranged and had separated. In 1950, the insured moved to Florida and there commenced a divorce proceeding against his wife. After hearings, a Referee found adversely to the insured. The Referee's findings were the subject of motions pending at the time of insured's decease.

"4. During the night of February 10, 1951, the insured took his life by poison in his mother's apartment in New York City.

"5. Found with the insured's body was a sealed envelope with the inscription: 'My last will and testament—to be opened only by my mother.' Inside the envelope was a four-page handwritten statement which read, in part, as follows:

" 'This is my last will

 Febr. 10, 1951

" 'I, undersigned, Marcel Pahmer, sound of body and mind, hereby declare the following to be my last will: and irrevocably request it be followed in its entirety:

" '1. I leave to my mother, Eva Pahmer, 28 E. 95th Str, N.Y.C. and bequeath upon her the totality of my belongings for her to dispose at her will.

" '2. In case my Life Insurance is payed off after my death, the totality of it is to go to my mother, above named, for her to own and dispose of at her will, after collecting it in full.

" '3. In case a portion is set aside automatically by law to my hated ex-wife, she is not to use it under any pretext or cause, but to set it aside exclusively for my son, Johnny Pahmer, now aged 11 y.

" '4. Whatever, in case this is so, my hated ex-wife, whom I have divorced purposely and irrevocably, is able to extort from my Life Insurance is not to be destined to her, but to be put in escrow and set aside for the use of my son, Johnny Pahmer, when and not before his 18th birthday.

" * * * * *

" '10. I also instruct my mother to prepare a "dossier" concerning the beastly doings and writings of my hated ex-wife, by means of the papers she will find, so that she (my mother) or her successors will show to my son when he reaches the age of 18 y. who killed his father and what monster bore him to life.' "

that the instrument was not executed with testamentary formalities and, therefore, was not admissible to probate." Neither party contested this conclusion. We have no contrary view but consider the eligibility of the instrument to probate to be a question not necessary to decide.

The Regulations of the Veterans' Administration contain the following provisions:

"§ 8.46 *Beneficiary designations.*

\* \* \* \* \* \*

"A beneficiary designation shall be made by notice in writing to the Veterans' Administration signed by the insured. A beneficiary designation, but not a change of beneficiary, may be made by last will and testament duly probated.

\* \* \* \* \* \*

"§ 8.47 *Beneficiary changes.* The insured shall have the right at any time, and from time to time, and without the knowledge or consent of the beneficiary to cancel the beneficiary designation, or to change the beneficiary, \* \* \*. A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Admnistration by the insured or his agent, and must contain sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Veterans' Administration. Upon receipt by the Veterans' Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution: *Provided,* That any payment made before proper notice of designation or change of beneficiary has been received in the Veterans' Administration shall be deemed to have been properly made and to satisfy fully the obligations of the United States under such insurance policy to the extent of such payments."

Concededly, in the case before us the substitution of the mother as the insured's beneficiary did not fully comply with these regulations. But in the field of National Life Insurance the cases are legion which hold that in judging of the efficacy of an attempted change of beneficiary "the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured". Roberts v. United States, 4 Cir., 157 F. 2d 906, 909, certiorari denied 330 U.S. 829, 67 S.Ct. 870, 91 L.Ed. 1278. This case may be cited as typical of this long, unbroken, line of authority. Thus it is abundantly established that a change of beneficiary may be shown by proof of intent to make the change coupled with "positive action on the part of the insured evidencing an exercise of the right to change the beneficiary." Collins v. United States, 10 Cir., 161 F.2d 64, 67, certiorari denied 331 U.S. 859, 67 S.Ct. 1756, 91 L.Ed. 1866. In this case it was stated that the requirement of "positive action" is satisfied if "the insured did everything that was necessary on his part to evidence a change in beneficiary." In Roberts v. United States, supra, 157 F.2d at page 909, it was said that the requirement of positive action was satisfied if the insured "has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer". To the same effect is Mitchell v. United States, 5 Cir., 165 F.2d 758, 2 A.L.R.2d 484. In Shapiro v. United States, 2 Cir., 166 F.2d 240, certiorari denied Shapiro v. Shapiro, 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779, this court indicated concurrence with these cases. In McCollum v. Sieben, 8 Cir., 211 F.2d 708, 712, it was said that the requirement of positive action was satisfied if the insured, "before his death, \* \* \* had done all that reasonably could have been expected of him to bring about the change". In Senato v. United States, 2 Cir., 173 F.2d 493, 495, this court said that the action taken to carry out his intent was enough "so long as he might reasonably be supposed to have thought it enough."

In the case before us we think it plain that the insured's "will," even if not a writing entitled to probate as a will, required a finding that he intended to substitute his mother for his wife as the beneficiary of his insurance. His direction that "In case my Life Insurance is payed [sic] off after my death, the totality of it is to go to my mother," is not in conflict with any evidence of a contrary intent and unequivocally states his intent that his mother shall be the beneficiary. There is no evidence to show, and the parties do not suggest, that there was outstanding life insurance other than the policy of National Life Insurance involved herein.

Somewhat closer is the question whether the proofs of positive action to effectuate the change, were sufficient. It is argued that the change was ineffective because there was no action taken to accomplish the intended change *in the lifetime* of the insured: that the only positive action taken was to write a document which was plainly intended as a will and as such not intended to take effect until his death. We think, however, that the suggested distinction between a change of beneficiary accomplished during the insured's lifetime and a change to become effective upon his death is of no significance, at least for present purposes. For a change, even if accomplished in his lifetime, would not have been operative until his death. At any time thereafter the insured would have had power to make another change. To say that "X, a substituted beneficiary, shall receive the insurance on my death" is in legal effect the same as to say that "X is hereby designated as my substituted beneficiary." We hold, therefore, that here the intent to substitute the mother as the beneficiary was not ineffective because accompanied by an expression of intent that the change should not take effect until the death of the insured.

It remains to consider whether the intended change was sufficiently evidenced by a positive action. The intent was plainly expressed in a writing dated February 10, 1951, signed by the insured and sealed in an envelope endorsed "To be opened only by my mother," who was the intended substituted beneficiary. This envelope was found by the body of the insured upon the discovery, on February 11, 1951, of his suicide in an apartment which he then shared with his mother. We hold that his action in signing a plain statement of his intended change of beneficiary and disposing of the writing in such a way that, as he might reasonably have expected, it would come into his mother's possession immediately upon the discovery of his suicide, was enough to accomplish the intended change. Egleston v. United States, D.C., 71 F.Supp. 114, affirmed, 7 Cir., 168 F.2d 67; Collins v. United States, supra; Lincoln Bank & Trust Co. v. United States, D.C., 71 F. Supp. 745.

■ Upon receipt of properly substantiated notice of the writing, the Veterans' Administration became obligated to pay over to the mother so much of the proceeds of the insurance as was still in its hands. Collins v. United States, supra; Roberts v. United States, supra; Egleston v. United States, supra; Zabor v. United States, D.C., 113 F.Supp. 287, affirmed Zabor v. Siejak, 2 Cir., 212 F.2d 440. The fact that such notice was not received until after the death of the insured, is immaterial. Widney v. United States, 10 Cir., 178 F. 2d 880; McKewen v. McKewen, 5 Cir., 165 F.2d 761, certiorari denied 334 U.S. 860, 68 S.Ct. 1530, 92 L.Ed. 1780; Collins v. United States, supra; Coleman v. United States, 85 U.S.App.D.C. 145, 176 F.2d 469, 471. In the Coleman case, the wife, who claimed as a substituted beneficiary, relied on a writing by the insured which stated " 'On date of Oct. 1, 1943, I took out $10,000 in (National Service Life Insurance) (United States Government Insurance) naming you as my beneficiary.' " This statement was not true: in fact, the insured, when he took out the insurance, named his mother as beneficiary. Moreover, there was other evidence of an intent that his mother, and not his wife, should take. We think it due to these factors that the

trial court was sustained in holding that no change in its original designation was accomplished. In Butler v. Butler, 5 Cir., 177 F.2d 471, it was held that the proof *of intent* to make a change was not sufficiently proved. Here, we find the intent abundantly established. To the extent that Butler holds that the substitution of beneficiary failed because the insured failed to give written notice of the change to the Veterans' Administration, we think the holding in conflict with the great weight of authority as exemplified by the cases cited earlier in this opinion.

The wife relies heavily on Hester v. Hester, 5 Cir., 171 F.2d 477, in which the insured had instructed his brother by letter to hold his written designation of substituted beneficiaries " 'in your box as they are for use in case of misfortune to me, as later might want to change them in some way * * *.' " Id., 171 F.2d at page 478. The court held the substitution ineffective because by his letter the insured "kept a tight and effective control on the letters to the Veterans' Administration and thereby prevented the intent to give, which he had given expression to from becoming effective in his lifetime." In the instant case, however, the insured did not keep control of his "will": by his contemporaneous suicide he negated an intent to hold the document for another change of beneficiary and thus in effect accomplished a prompt and irrevocable surrender of control. And even if this be not deemed a valid distinction, we could not here apply the Hester holding. For, with deference, we think it immaterial that the Hester insured prevented his indicated change "from becoming effective in his lifetime." Even if he had sent his designation of substituted beneficiaries direct to the Veterans' Administration, it would not have become operative until his death, as we observed above.

It is argued in behalf of the wife: "If a duly probated will cannot effect a change of beneficiary [because of Regu-lations § 8.47], the result can scarcely be different with a dispositive document purporting to be a will merely because the testator was unfamiliar with the forms of the law governing the validity of wills." The argument is fallacious: its premise is unsound. If the courts, in order to give effect to the insured's intent, will "brush aside" a regulatory requirement that "a change of beneficiary to be effective must be made by a notice in writing signed by the insured and forwarded to the Veterans' Administration," they will similarly treat another regulatory requirement (§ 8.46) which purports to withhold effect to a change of beneficiary "made by last will and testament duly probated." Dicta to the contrary in Hester v. Hester, supra, and the holding in Lane v. United States, D. C., 116 F.Supp. 606, we think in flat conflict with the basic principle which underlies the multitude of cases holding that notice to the Veterans' Administration during the lifetime of the insured, is not essential to an effective change. We agree with the holding on this point in Woods v. United States, D.C.M.D.Ala., 69 F.Supp. 760, at page 763. See also Zabor v. United States, supra.

 The proviso to Regulation § 8.47, quoted above, furnishes the United States with all needed protection against a belated notice of a substitution of beneficiary whether the designation be embodied in a probated will or in a nontestamentary writing. The protection thus afforded was not invoked by the United States in this case either by pleading or by way of opposition to the respective motions for summary judgment. Indeed, the United States disclaimed any interest in the outcome. Obviously, the reason was that no payment of the insurance proceeds had been made to the wife before the claim of the mother had been received. Consequently the situation here does not require strict enforcement of either of the cited regulations as to any part of the proceeds. Woods v. United States, supra.

Reversed.