Elizabeth Kley CRISCUOLO, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant,

and

Audrey Schmuck Zoch Linde, Defendant-Appellant.

No. 11771.

United States Court of Appeals Seventh Circuit.

Dec. 18, 1956.

Rehearing Denied Jan. 14, 1957.

James E. Hastings, Michael A. Gerrard, Erving S. Sternberg, Chicago, Ill., for appellant.

Clarence Kammermann, Robert Tieken, U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

This is an action to recover under a National Service Life Insurance policy. Sergeant Irvin Henry Zoch was the deceased soldier. On February 9, 1948, while serving in the armed forces of the United States and stationed at Chanute Air Force Base, Illinois, Sergeant Zoch took out a $10,000.00 National Service

Life Insurance policy on his life, naming his mother, the plaintiff herein, as beneficiary, and his half-sister as contingent beneficiary. On May 12, 1951 Sergeant Zoch and Audrey Schmuck were married. She survived her husband and her name is now Linde. By order of the Court, pursuant to Sections 445 and 817 of Title 38 U.S.C.A., Mrs. Linde was made an additional defendant, and in this action claims the proceeds of the policy as a substituted beneficiary.

The District Court held that the widow, Audrey Linde, had failed to establish that a change in the beneficiary of Zoch's policy had been made, and judgment was entered in favor of the plaintiff. This appeal followed.

■ In this type of case the person who claims to be the substituted beneficiary of a National Service Life Insurance policy has the burden of proving an intention on the part of the insured to change the beneficiary, plus some affirmative act to carry out that change. Prose v. Davis, 7 Cir., 177 F.2d 478; Moths v. United States, 7 Cir., 179 F.2d 824.

All of the witnesses at the trial gave testimony which supported the claim of the widow, Audrey Linde. Why this testimony was not controlling we are not advised. In the trial court's memorandum it is stated: "Witnesses were produced in support of the widow's claim but the evidence fell far short of establishing the fact that a change in the beneficiary had been made." There is nothing in the findings of fact and conclusions of law or memorandum to indicate why none of the witnesses were entitled to belief.

Two of the witnesses were Audrey Linde and her mother, Ruth Schmuck. Among other things they testified that Audrey had known Zoch four and a half years before she married him on May 12, 1951 at the Mont Clare Congregational Church in Chicago. Zoch's mother had been strongly opposed to the marriage. Zoch told Audrey and her mother that his mother had evicted him. There was other testimony showing a hostile feeling between Zoch and his mother. Zoch stated on the Sunday before he went back to camp the last time, that he was going to make Audrey the beneficiary of his insurance policy, and that he would speak to Yelvington, the Company Clerk, about making the change.

This testimony, if credible, would prove an intent on the part of Zoch to change the beneficiary of his insurance policy. Of course, the widow and her mother were interested witnesses. If such testimony were not corroborated, such interest in the outcome of the trial might destroy or at least severely weaken their testimony.

Benita Scheneker was another witness. She had known Audrey for some years before Audrey married Zoch. She and the boy who became her husband, had doubledated with Zoch and Audrey. She testified that in April, 1951, Zoch spoke of the strained relations between his mother and him, and further that Zoch stated he was going to change the beneficiary of his insurance policy to Audrey.

The other witness was Leonard Yelvington who, at the time of the trial, was a student at Florida Southern College. He had been Chief Clerk of the Air Force Band, Chanute Air Force Base, Illinois, and Zoch was a member of that Company. It was part of Yelvington's duties to take care of personnel matters and to assist soldiers in his organization in making out various forms such as changes in beneficiaries in National Life Insurance policies. He was a close friend of Sergeant Zoch, but had met Audrey only once before the date of the trial, and that was after the date of Sergeant Zoch's death.

Yelvington testified that on the day before Zoch was stricken with the illness which caused his death about a week later, Zoch brought to him a piece of paper upon which Zoch had written the names of his wife and her mother, and stated that he desired to have them named as beneficiaries of his insurance policy. Yelvington told Zoch that he was quite busy at the moment, but he took the paper and thereafter typed up on the ap-

propriate form a change in beneficiaries so that Audrey, the wife, would be the beneficiary and her mother the contingent beneficiary. He expected Zoch to be in to sign the form, and retained it in the out-box on his desk, but that evening Zoch was stricken and never recovered, and hence the form never was signed. Yelvington testified that later he sent the form in to the Veterans' Administration. From other evidence it was disclosed that the Veterans' Administration allowed the claim of Audrey Zoch Linde, but when the suit was started by the plaintiff herein, the Government disclosed the conflicting claims under this policy, and asked for a determination by the Court.

■ Ordinarily this Court is not concerned with the credibility of witnesses. That is the function of the trial court. In the case at bar, the trial court said nothing to indicate that it did not believe any of the four witnesses, but it is difficult to comprehend why it disallowed the claim of Audrey Zoch Linde unless for some reason undisclosed by the record the judge refused to believe any of the witnesses, two of whom were disinterested.

One clue to the determination of the Court may be the statement in the memorandum that "the evidence fell far short of establishing the fact that a change in the beneficiary had been made." If, by that statement, the Court was of the view that the change in beneficiary form had to be completed in order to affect such change, that might be an explanation of the decision, but it would be an incorrect application of pertinent law.

The applicable rule is stated in two previous decisions of this Court. In Prose v. Davis, 177 F.2d 478, at page 481, this Court said: "Variously stated, many courts have adopted the rule that in cases involving change of beneficiary in military service insurance policies they will brush aside legal technicalities in order to effectuate the manifest intent of the insured, and if the insured has expressed an intention to change the beneficiary originally named in his policy

and done an affirmative act to effectuate the change, leaving only ministerial acts to be performed by the insurer, they will treat as done that which should have been done and give effect to his intent."

In Moths v. United States, 179 F.2d 824, at page 826, we said: "Of course, a mere intent to change the beneficiary is not enough. A mere statement, oral or written, that such a change has been made is not sufficient unless followed by appropriate affirmative action, Butler v. Butler, 5 Cir., 177 F.2d 471, but it has been held that the intention, desire, and purpose of the soldier should, if it can reasonably be done, be given effect by the courts, and that substance, rather than form, should be the basis of their decisions. The clearly expressed intention and purpose of the soldier should control, and should not be thwarted by the fact that all the formalities for making this purpose effective may not have been complied with."

A case quite similar to the case at bar is Zabor v. United States, D.C.W.D.N.Y., 113 F.Supp. 287, affirmed sub. nom. Zabor v. Siejak, 2 Cir., 212 F.2d 440. In that case, as here, there was testimony of a fellow soldier as to instructions to the proper authorities to change the beneficiary, and the forms were filled out and signed. In that case the forms were never found but the change in beneficiary was upheld.

While it is true that in the case at bar the form for change of beneficiary was not actually signed by the soldier, it is apparent that the only reason it was not signed was Zoch's sudden illness. After being stricken he was, apparently, in no condition to transact any business before the day of his death.

■ Yelvington's testimony clearly established that the names appearing in the unsigned form were given to him on a piece of scratch paper, which had been written out in Sergeant Zoch's handwriting. His testimony was "He brought in to me a piece of scratch paper showing the beneficiaries he desired to have on his policy." We think this case is even stronger than Prose v. Davis, 7 Cir., 177

F.2d 478, and there we reversed the decision of the trial court even though there was only indirect or circumstantial evidence of an affirmative act. Here we think the soldier's intention was clearly proved as well as the affirmative act which he took to make the change effective.

Judgment reversed and remanded for further proceedings not inconsistent with this opinion.