**Mildred L. BERK, Plaintiff,**

**v.**

**UNITED STATES of America, Floramye Berk, Clare Eva Berk, Roberta Gay Berk and Shirie Berk, Defendants.**

**No. 66–C–1058.**

United States District Court
E. D. New York.

Jan. 6, 1969.

Alfred Rice, New York City, for plaintiff; by Murray Ramson, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Brooklyn, for United States of America; by Howard Babbush, Asst. U. S. Atty., Brooklyn, of counsel.

Taback & Hyams, Jamaica, N. Y., for defendant Floramye Berk; by Ira L. Hyams, Jamaica, N. Y. of counsel.

Pepperbloom & Pepperbloom, for defendants Clare Eva Berk, Roberta Gay Berk and Shirie Berk; by Irving Pepperbloom, of counsel.

JUDD, District Judge.

### DECISION

This is a suit on a National Service Life Insurance policy, in which the United States is merely a stakeholder. The real contest is between the veteran's mother, plaintiff in the action, and his second wife, one of the defendants. The children by his first wife and his first wife are also defendants.

The evidence produced at the trial makes certain facts quite clear, though it leaves the critical issue, the actual intention of Berk, the insured veteran, as a close issue for the court's decision. The burden of showing that a change of beneficiary was intended rests on the party challenging the last beneficiary of record. Legatie v. United States, 40 F.R.D. 114 (E.D.N.Y.1966). See also Benard v. United States, 368 F.2d 897 (8th Cir. 1966). In this case the burden rests on the defendant Floramye Berk, the second wife.

The policy was taken out while the deceased was in the service from 1943 to 1945, and was converted to an ordinary life policy after his discharge. Berk's mother was named as beneficiary by an instrument filed with the Veterans Administration in October, 1964. In September, 1965, as part of a separation agreement with his first wife, Berk agreed to maintain the policy in force for the benefit of his children. He took no action to carry out this agreement, but his mother has stated that she will use the proceeds for their education. One daughter is now seventeen, and the other daughter is fifteen.

Berk remarried on November 21, 1965, and executed two forms on December 13, 1965. One form was designed to make his new wife the beneficiary of a $10,000 group life policy provided by his then employer, and the other was an official form to designate her as the beneficiary of his National Service Life Insurance policy. The first form was delivered to his payroll supervisor, and became effective. The second form was still in his office desk when he died, folded in a stamped envelope addressed by him to the Veterans Administration. His widow mailed this form to the Veterans Administration when it came into her possession after his death.

Berk's signature to the Veterans Administration change of beneficiary form

was witnessed by his co-worker, Charles Savage, after the close of business on December 13. Savage reported Berk as saying that his new wife had asked him several times to make the change. I accept this testimony as true, in preference to her assertion that Berk brought up the matter.

Berk was aware of the terms of his separation agreement, for his first wife had summoned him to court over disputes about the amounts he must pay for her and her children. In spite of a salary in the $12,000 range, plus his second wife's modest secretarial earnings, Berk was unable to meet the payments under the separation agreement without financial help from his mother. In fact, his mother had given him $300 in cash for that purpose on April 3, 1966, the night before he died.

The crucial issue is whether Berk intended to designate his second wife as beneficiary of his veteran's policy. She testified that he assured her that his secretary must have picked up the form and mailed it, and that he would get a new form if the carbon did not come back soon from the Veterans Administration. But he did not send for such a form in almost four months before he died, despite the fact that no copy of his form came back from the Veterans Administration. I am not satisfied that he sent for the blank form which his second wife produced during her testimony.

Berk's mother testified that he had told her several times, including the night before he died, that she was still the beneficiary, and that he wanted her to care for his children.

Viewing testimony about a dead man's statements with appropriate caution (Ward v. New York Life Ins. Co., 225 N.Y. 314, 322, 122 N.E. 207 [1919] ), I cannot fully accept the assertions of either woman. The widow was clearly shading the truth in asserting that the change of beneficiary was Berk's idea without any request from her. The mother was so anxious to keep the proceeds out of the hands of the second wife, that she introduced a quite unnecessary issue about her son's drinking habits, in a futile attempt to cast doubt on his signature on the change of beneficiary form. I assume for the purposes of this decision, that he told his wife that he would make out another form in her favor, and that he also told his mother that she was still the beneficiary (of record); but this does not resolve the question of his true intention.

What Berk did is the best evidence of his intention. He was a neat, methodical worker. I cannot believe that he was unaware for four months that the change of beneficiary form was still in his desk. He was pulled in various directions by his wife's insistence on being made the beneficiary, his obligation to his children under the separation agreement, and his continuing dependence on his mother for financial aid. Telling his wife that his secretary must have mailed the form was a means of staving off pressure from her; but he could easily have found out from his secretary whether she in fact mailed it.

If Berk had really wanted the form to be effective, and thought it went astray in the mails, he had ample time to get another form and fill it in. Asking his friend Berkowitz, in his wife's presence, to send for a new form, was a means of placating his wife, without committing himself to any action.

By holding the signed form in his own possession, Berk was in a position to comply with his wife's request if he decided to do so, but he still retained control of the situation. He had not done everything in his power to make the change effective at the time of his death. Therefore, I find that there was neither the intention nor the action necessary to change the beneficiary from his mother to his new wife.

The cases do not leave any serious doubt as to two relevant rules of law. (1) A contract (including a separation agreement) cannot limit a veteran's right to change the beneficiary of a government insurance policy. (2) A

change of beneficiary is effective without being filed with the Veterans Administration, if the veteran intended to make the change and took action reasonably calculated to exercise his right.

▮ In Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), the Supreme Court held that the provision of 38 U.S.C. § 802(g) (now 38 U.S.C.A. § 717[a]) providing that "The insured shall have the right to designate the beneficiary or beneficiaries of insurance * * * and shall at all times have the right to change the beneficiary or beneficiaries * * *" precluded any contrary provision of state law from constricting that right. See also Kimball v. United States, 304 F.2d 864 (6th Cir. 1962), interpreting 38 U.S.C.A. § 749, relative to a United States Government insurance policy, to the same effect; Hoffman v. United States, 391 F. 2d 195 (9th Cir. 1968). It is clear, therefore, notwithstanding any provision to the contrary in the separation agreement, that Harold Berk had the right to change the beneficiary of the policy up to the moment of his death.

▮ Making such a change requires proof of both intention and appropriate action. "(I)t is abundantly established that a change of beneficiary may be shown by proof of intent to make the change coupled with 'positive action on the part of the insured evidencing an exercise of the right to change the beneficiary.'" United States v. Pahmer, 238 F.2d 431, 433 (2d Cir. 1956), citing Collins v. United States, 161 F.2d 64, 67 (10th Cir. 1947), cert. den. 331 U.S. 859, 67 S.Ct. 1756, 91 L.Ed. 1866 (1947). See also Benard v. United States, 368 F.2d 897 (8th Cir. 1966).

If Berk's intent to make his second wife the beneficiary were clearly proved, the filling out of the Veterans Administration form would meet the minimum requirements of an affirmative act. United States v. Pahmer, 238 F.2d 431 (2d Cir. 1956); Ward v. United States, 371 F.2d 108 (7th Cir. 1966).

▮ When the circumstances are equivocal, proof may be required that the veteran has done all that he could reasonably be expected to do. In Benard v. United States, 368 F.2d 897, 901 (8th Cir. 1966), the court stated that in addition to proof of intent, "there must be proof that the insured did by way of an affirmative act all that could reasonably have been expected of him under the existing circumstances to effectuate his intention to change his beneficiary." See also Johnson v. White, 39 F.2d 793 (8th Cir. 1930).

The court believes that this latter statement will adequately reconcile most of the cases dealing with an unfiled change of beneficiary. In United States v. Pahmer, 238 F.2d 431 (2d Cir. 1956), the veteran made a holographic will and indicated therein his desire to change the beneficiary of his policy. The next day his body was found, he having committed suicide. In Ward v. United States, 371 F.2d 108 (7th Cir. 1966), the insured filled out an improper form which, because of the amount inserted therein, could only have referred to his National Service Life Insurance policy. The filling out of the wrong form has often been held to be a sufficient affirmative act. See Rosenschein v. Citron, 83 U.S.App.D.C. 346, 169 F.2d 885 (1948); Shapiro v. United States, 166 F.2d 240 (2d Cir. 1948). In the above circumstances it could be said that the insured had done everything that could reasonably have been expected of him. And see Criscuolo v. United States, 239 F.2d 280 (7th Cir. 1956), where the insured was stricken by the illness to which he succumbed before having the chance to sign a form which had been filled out at his specific request.

In this case, the testimony and the evidence make it clear that the insured knew what was required in order to change beneficiaries. He had properly submitted a change of beneficiary form in favor of his mother, the plaintiff, in October, 1964. He had filled out the form in favor of his second wife in December of 1965 and had it witnessed by

582

his co-worker. He had addressed an envelope to the Veterans Administration in Philadelphia, but he never mailed the envelope. With Berk's knowledge of Veterans Administration requirements, it is unlikely that he would have neglected to mail the change of beneficiary if he had formed a definite intention to make the change. Even if he actually had intended to change the beneficiary, he failed to do all that was reasonably to be expected of him under the circumstances in this case to effectuate that intention.

Payment of the policy should be made to plaintiff Mildred Berk according to the option selected by the deceased in the change of beneficiary form on record with the Veterans Administration at his death.

This decision includes the court's findings in accordance with F.R.Civ.P. 52(a).

Settle judgment on notice, including any desired allowance of attorneys' fees to the successful party.