Judith I. FAGAN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

Viola L. Freshour, Intervenor.

No. 97–1276.

United States Court of Appeals for Veterans Claims.

Sept. 28, 1999.

Roger W. Frickle was on the brief for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr. were on the brief for the appellee.

Rel S. Ambrozy was on the brief for the intervenor.

Before KRAMER, STEINBERG, and GREENE, Judges.

KRAMER, Judge:

The appellant, Judith I. Fagan, the daughter of deceased veteran Jesse Freshour, appeals a March 26, 1997, decision of the Board of Veterans' Appeals (BVA or Board) denying her entitlement to the proceeds of the veteran's National Service Life Insurance (NSLI) policy. Record (R.) at 1–10. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will vacate the decision of the BVA and remand the matter for further proceedings consistent with this opinion.

## I. RELEVANT BACKGROUND

In January 1947, the veteran designated Hildegarde Freshour, his first wife, as the beneficiary of his NSLI policy. R. at 13. She died in June 1985. R. at 20. In March 1987, the veteran married the intervenor, Viola L. Freshour. R. at 18. In April 1987, the veteran and the intervenor executed a postnuptial agreement regarding their property whereby they agreed to keep separate all individual property brought into the marriage and to renounce all rights in each other's estates upon death. R. at 48–50. The agreement explicitly allowed each person to make specific bequests to the other in their wills. R. at 49. There is no specific reference to the proceeds of the veteran's NSLI policy in the agreement. The veteran's will was also executed in April 1987 and also makes no specific reference to the proceeds of his NSLI policy. R. at 42A–45. The veteran died on December 25, 1993, as a consequence of malignant prostate cancer. R. at 23. The death certificate appears to indicate that the prostate cancer had been present for five years, although it apparently was designated terminal only in the last month of the veteran's life. *Id.*

In June 1994, the intervenor submitted an informal claim for the proceeds of the NSLI policy. R. at 25. In support of her claim, she also submitted a one-sentence, hand-written note dated October 30, 1993, purporting to change the beneficiary of the veteran's NSLI policy to herself. R. at 15. In July 1994, counsel for the appellant submitted a letter to VA seeking entitlement to the insurance proceeds on behalf of the executor of the veteran's estate. R. at 28.

In July 1994, VA determined that the veteran had designated the intervenor as the beneficiary under his NSLI policy. R. at 37. The appellant appealed. In October 1994, VA requested a handwriting analysis of the signature on the October 1993 statement. The director of VA's Inspector General Forensic Laboratory submitted a report in February 1995 concluding that "it is the opinion of the examiner that [the veteran] is the author of his signature appearing on [the October 1993 letter]." R. at 59–61. Subsequently, the intervenor advised VA that the veteran had told her on many occasions that he wanted her to have the policy proceeds in return for her having taken care of him in health and sickness. R. at 91.

In its decision, the Board, based upon the expert opinion, found that the veteran was the author of the signature on the October 1993 letter. R. at 7. The Board then concluded that the veteran had intended to change the beneficiary of the NSLI policy; the Board based its conclusion solely on the fact that he had signed the letter in question. *Id.* The BVA also concluded that the signing of the letter was an overt act designed to effectuate the veteran's intent, within the meaning of our decision in *Young v. Derwinski*, 2 Vet.App. 59 (1992). Finally, citing caselaw from other federal courts, the Board analyzed whether the veteran had done everything reasonably within his power to effectuate his intent. The Board stated:

> There is no evidence that the veteran in this case intended to hold the October 1993 document to prevent it from taking effect, or that he had such competing concerns over the disposition of the proceeds since the former beneficiary, [his first wife], had died.... [I]t has not been shown that this veteran was aware of anything more to be done to effectuate his intent. He had little time to send the document to VA prior to his death and was not required under the law to do so anyway. *Young*[, 2 Vet. App.] at 61.

> The evidence in this case shows, therefore, that the veteran did everything reasonably within his power to effectuate the change in beneficiary.

R. at 8. Accordingly, the Board concluded that the October 1993 letter was sufficient to change the beneficiary of the NSLI policy and ruled in favor of the intervenor.

The appellant filed a timely appeal to the Court.

## II. ANALYSIS

This case presents the Court with the opportunity to clarify our caselaw regarding NSLI adjudications where there are competing parties seeking beneficiary status. In order to accomplish this task fully, it is necessary to start at the beginning.

### A. STATUTORY AND REGULATION PROVISIONS

The statutory provision permitting insured veterans to change their NSLI beneficiary is 38 U.S.C. § 1917(a), which provides: "The insured shall have the right to designate the beneficiary or beneficiaries ... and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries." Pursuant to the explicit grant of authority contained in section 1917(a), VA's implementing regulation, 38 C.F.R. § 8.22 (1998), requires: "A change of beneficiary or optional settlement to be effective must be made by notice in writing signed by the insured *and forwarded to the Department of Veterans Affairs by the insured or designated agent,* and must contain sufficient information to identify the insured." (Emphasis added.)

### B. OUR NSLI CASE LAW

■ Our first major case dealing with an NSLI beneficiary change was *Young,* which the Board cited in its decision. In *Young,* based on the evidence of record, the Board found that the insured veteran had mailed a change-of-beneficiary letter to VA even though it had never been received by VA during the insured veteran's life. A copy of the letter was sent to VA after the insured veteran's death. The BVA accepted the change of beneficiary and the Court affirmed the decision. The narrow holding of *Young* is that a valid change of beneficiary does not have to be *received* by VA during the insured veter-

an's life. In reaching its conclusion, the Court in *Young* set forth the following test for determining whether a valid change had been made:

First, there must be evidence of an intention on the part of the veteran to change the beneficiary, and second, there must be some overt act done to effectuate that intent. It is not required that a change[-]of[-]beneficiary form be received by the VA during the course of the veteran's life. *Hammack v. Hammack,* 359 F.2d 844 (5th Cir.1966) [ (per curiam) ].

*Young,* 2 Vet.App. at 61. The Secretary's implementing regulation is not addressed in *Young,* and the Court notes that *Young* is not inconsistent with the regulation, which requires only that the writing be *forwarded* to VA. As to the case cited in *Young,* the entire legal analysis in *Hammack* consists of two sentences, which the above quotation paraphrases.

The second pertinent case in the Court's NSLI caselaw is *Jones v. Brown,* 6 Vet. App. 388 (1994). In *Jones,* the appellant sought to prove that the insured veteran had visited a VA office to fill out a change-of-beneficiary form notwithstanding the fact that VA had no record of such visit. The Board found that the appellant was not entitled to the NSLI proceeds because there was no writing evidencing the insured veteran's intent to change the beneficiary of his policy. The Court vacated the BVA decision and remanded the matter based upon the test articulated in *Young.*

Although *Young* involved a writing by the veteran, it is not necessary that the evidence of the veteran's intent or overt act done to effectuate that intent be in the form of a writing by the veteran. Other forms of evidence of an intention to change the beneficiary may suffice.

*Id.* at 390. *Jones* did not address the Secretary's implementing regulation.

The Court first explicitly addressed 38 C.F.R. § 8.22 in *Curtis v. West,* 11 Vet.

App. 129 (1998). In *Curtis*, the appellant, acting under a general power of attorney, signed in the insured veteran's name a change-of-beneficiary form making herself the beneficiary of his NSLI policy. The Board found that the change was not valid, and the Court affirmed. Relying on the regulation, the Court agreed with the BVA in holding that the signature of a person other than the insured veteran is not valid where neither VA nor a court has adjudicated the insured veteran incompetent. Clearly relying upon 38 C.F.R. § 8.22 as the dispositive authority in this case, the Court stated:

> Pursuant to 38 U.S.C. § 1917(a), the insured shall have the right to designate the beneficiaries of insurance maturing on or after August 1, 1946, and, subject to regulations, has the right to change the beneficiaries of that insurance without the consent of the beneficiaries. *See also* 38 C.F.R. § 8.22 (1997). In addition, 38 C.F.R. § 8.22 (formerly § 8.47) unambiguously provides,
>
> > A change of beneficiary or optional settlement to be effective *must be made by notice in writing signed by the insured* and forwarded to the Department of Veterans Affairs by the insured or designated agent, and must contain sufficient information to identify the insured.
>
> Emphasis added.

"[W]hen a reviewing court 'find[s] the terms of a statute [or regulation] unambiguous judicial inquiry is complete except in rare and exceptional circumstances.'" *Clarke v. Brown,* 10 Vet. App. 20, 22 (1997) (quoting *Smith v. Derwinski,* 2 Vet.App. 429 (1992) quoting *Demarest v. Manspeaker,* 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991)). The Court in *Gardner v. Derwinski,* stated that the "plain meaning must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner,* 1 Vet.App. 584, 586–87

(1991) *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *see also Clarke,* 10 Vet.App. at 22. The Secretary of VA has the power to promulgate all rules and regulations which are necessary and appropriate to "carry out the laws administered by [VA]." 38 U.S.C. § 501(a). Regarding the NSLI, Congress empowered the Secretary with the discretion to make policy "provisions as may be found to be reasonable and practicable." 38 U.S.C. § 1906. Therefore, the designation of a beneficiary for an NSLI policy is covered by federal law and the plain meaning of § 8.22 requires that the veteran give notice in writing, signed by him, to change his beneficiary.

*Curtis,* 11 Vet.App. at 132–33. Then, after observing that "[t]he courts have held that where the intent of the insured is manifest, the court will brush aside all legal technicalities to effectuate that intent[,] *United States v. Pahmer,* 238 F.2d 431[, 433] (2d Cir.1956)[, *cert. denied,* 352 U.S. 1026, 77 S.Ct. 592, 1 L.Ed.2d 597 (1957) ]; *Collins v. United States,* 161 F.2d 64[, 68] (10th Cir.1947)[,]" and noting the test set forth in *Young* and applied in *Jones,* the Court stated that there was no evidence of record regarding the insured veteran's intent, and therefore no call to apply any of the cases concerning intent. *Curtis,* 11 Vet. App. at 133.

The Court again dealt with the Secretary's implementing regulation in *Klekar v. West,* 12 Vet.App. 503 (1999), which held that the identity of the person who handwrote the text of a change-of-beneficiary form is irrelevant when determining whether a beneficiary is changed in accordance with 38 C.F.R. § 8.22 because the plain language of that regulation requires only that the writing submitted to VA be "signed by the insured and forwarded to" VA, not that the text of the writing be handwritten by him. The Court stated that "the sole determinative issue present-

ed for review is the Board's factual determination as to the authenticity of the veteran's signature" and found, in essence, that the beneficiary had been duly changed because the regulatory requirements had been met as to the signing and forwarding of the notice of that change. *Id.* at 507. The Court then held that the Board's finding of fact that the insured veteran's signature was authentic was not clearly erroneous.

## C. NSLI CASE LAW FROM OTHER FEDERAL COURTS

At this point, we observe that the reliance placed on the language of the regulation in *Curtis* appears to be in tension with the nonutilization of the regulation implicit in *Jones.* In order to resolve this tension, it is important to recognize that the statute and the regulation have been in effect substantively unchanged since at least World War II and that a significant body of NSLI caselaw developed before this Court was created.

### 1. *The Burden of Proof*

■ The first point that should be taken from the large body of federal caselaw is that in proving both the intent and the overt act or acts, the party claiming the insured veteran intended to change his NSLI beneficiary has the burden of proof. *See Baker v. United States,* 386 F.2d 356, 359 (5th Cir.1967); *Bradley v. United States,* 143 F.2d 573, 576 (10th Cir.1944); *Tierney v. United States,* 315 F.Supp. 1073, 1075 (D.Mass.1970); *see also Criscuolo v. United States,* 239 F.2d 280, 281 (7th Cir.1956); *cf. Elias v. Brown,* 10 Vet. App. 259, 263 (1997) ("The appellant cannot be entitled to the benefit of the doubt here because there are two claimants in this case. The benefit of the doubt cannot be given to both.").

### 2. *The Intent Requirement*

#### a. Compliance With the Implementing Regulation Not Required

■ An NSLI policy is an insurance contract between the government and the insured veteran. *See White v. United States,* 270 U.S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530 (1926); *Wolfe v. Gober,* 11 Vet. App. 1, 2 (1997); *Collins,* 161 F.2d at 67. "[T]he insurer has no interest in the matter except in carrying out the intentions of its policyholder." *John Hancock Mutual Life Ins. Co. v. Douglass,* 156 F.2d 367, 369 (7th Cir.1946) (cited in *Collins,* 161 F.2d at 68). Accordingly, "in the field of [NSLI] the cases are legion which hold that in [the] judging of the efficacy of an attempted change of beneficiary 'the courts brush aside all legal technicalities [that is, the requirements of § 8.22] in order to effectuate the manifest intention of the insured.'" *Pahmer,* 238 F.2d at 433 (quoting *Roberts v. United States,* 157 F.2d 906, 909 (4th Cir.1946)).

#### b. Examples of Insufficient Proof of Intent

The scope of the intent requirement is probably best seen in cases where the insured veteran's intent is not adequately proven. In *Berk v. United States,* 294 F.Supp. 578 (E.D.N.Y.1969), the insured veteran had mailed change-of-beneficiary forms to VA. At the time of his second marriage, his mother was the named beneficiary, apparently so that she could use the proceeds to take care of the insured veteran's children by his first marriage. At the behest of his second wife, the insured veteran signed a change-of-beneficiary form making her the new beneficiary. He placed the form in a stamped envelope addressed to VA, but kept the envelope in his desk where it remained for four months until his unexpected death. The second wife mailed the form to VA after his death. The court in *Berk* found that the insured veteran was aware of the requirement that he must send a change-of-beneficiary form to VA, and concluded that his failure to mail the completed form despite adequate opportunity to do so showed that he had not "formed a definite intention to make the change." *Id.* at 582.

Accordingly, the proceeds were awarded to the insured veteran's mother.

In *Tierney, supra,* after the insured veteran divorced his first wife, he forwarded a completed form to VA changing the beneficiaries of his NSLI policy, in order to divide the proceeds evenly between his daughter by that marriage and his sister. After he remarried, he requested a new change-of-beneficiary form from VA. He completed that form in favor of his second wife and signed it in the presence of her and an attorney. However, rather than forwarding the form to VA as he had done with past forms, he placed it in a strong box in his house where it was found two years later upon his sudden death. During those two years the insured veteran apparently made statements to the effect that he had no intention of changing his beneficiary. The court in *Tierney* concluded that the second wife had failed to prove that the insured veteran intended to make the change indicated on the signed form. *Id.* at 1075. Together *Berk* and *Tierney* indicate that unless the insured veteran's intent to change his beneficiary is clearly proven, a signed change-of-beneficiary form, in and of itself, will not accomplish a change.

### 3. *The Overt Action Requirement*

Of course, as noted in *Young,* intent is only one of the two requirements. "It has been held without exception that a mere intent to change a beneficiary is not enough. Such an intent must be followed by positive action on the part of the insured evidencing an exercise of the right to change the beneficiary." *Collins,* 161 F.2d at 67; *see also Tierney,* 315 F.Supp. at 1075 ("Both the fact of intention and the fact of a reasonably adequate action to carry out his intention must be proved."). Although the requirement of some overt action designed to effectuate the insured veteran's intent is undisputed, "[w]here the courts diverge is as to the degree of affirmative action necessary to effect a change." *Collins,* 161 F.2d at 67. "We think it is plain that a careful reading of the cases . . . makes it clear that the sufficiency of the overt acts required is partially judged by the clarity and positiveness of the proof of intent." *Hawkins v. Hawkins,* 271 F.2d 870, 874 (5th Cir.1959). In other words, the extent to which the "technicalities" of the implementing regulation will be brushed aside depends upon the extent to which the insured veteran's intent has been proven. *See Pahmer* and *Roberts, supra.* Thus, the cases fall into two categories, one where the insured veteran's intent is clearly proven, and one where the insured veteran's intent is proven by only a preponderance of the evidence.

### a. Clearly Proven Intent May Be Supported With Less Proof of Overt Action

In the first set of cases, courts have held that where "the evidence of intent is conclusive . . . only an equivocal act consistent with that intent" must be proven. *Baker,* 386 F.2d at 359. One application of this rule quoted by courts is that if the intent to make the change is clearly proved, then "[t]he filling out of the [VA] form would meet the minimum requirements of an affirmative act." *Berk,* 294 F.Supp. at 581 (citing *Pahmer, supra,* and *Ward v. United States,* 371 F.2d 108 (7th Cir.1966)). However, courts have also held that where the insured veteran's intent is clearly proven a successful change can be made even in the absence of a completed change-of-beneficiary form or other writing, signed by the insured veteran, making such a change.

An example of the latter is *Criscuolo, supra.* The insured veteran in *Criscuolo* had expressed to his wife, his mother-in-law, and a personal friend his intention to change the beneficiary of his NSLI policy from his mother to his new wife. No evidence of a contrary intent was introduced. An Air Force personnel clerk testified that the insured veteran had come into his office and handed him a piece of paper indicating the beneficiary change he wished to make. The clerk replied that he

was very busy at the moment, but that he would type up the appropriate form, and the insured veteran could then return and sign it. Although the clerk completed the form that day, that afternoon the insured veteran was stuck with a sudden, incapacitating illness from which he never recovered. In reversing a lower court decision against a successful change, the *Criscuolo* court, observing that the claimant has "the burden of proving an intention on the part of the insured to change the beneficiary, plus some affirmative act to carry out the change," *id.* at 281, concluded that "the [insured veteran's] intention was clearly proved as well as the affirmative act which he took to make the change effective," *id.* at 283.

In *Hawkins, supra*, the insured veteran divorced his first wife, the named beneficiary of his NSLI policy, on the grounds of her adultery, and he later remarried. He obtained custody of the children of his first marriage, and they stayed with family friends when the insured veteran was unavailable to take care of them. Shortly after he remarried, the first wife obtained a court order granting to her the custody of the children from the first marriage. However, one week later the insured veteran successfully had that order vacated on the ground that it had been obtained by fraud on the part of the first wife. After his death, the insured veteran's first and second wives each claimed the NSLI proceeds. The only written proof that the insured veteran had changed his NSLI beneficiary was an ambiguous Army form that, on its face, made death benefits other than the NSLI policy payable to the second wife and a signed letter that he had sent to his second wife that stated that he had changed his policy to make her the beneficiary. The insured veteran's second wife, his mother, the friends of the family that cared for his children by the first marriage, and a service comrade of the insured veteran all swore that the insured veteran had stated at various times that he had told them that he had made his second wife the beneficiary of his policy. The

only evidence that the insured veteran intended to keep his first wife as the beneficiary was the testimony of the first wife who stated that he had expressed the intent that she should have the money so she could take care of their children. However, the date given by the first wife for the insured veteran's expression of intent was less than two months after the insured veteran had regained custody of the children by proving her fraud. The district court granted summary judgment in favor of the first wife. The court of appeals reversed; although recognizing that both intent and overt action must be proved, it held: "It is obvious that either clear and convincing proof of continuing intent *or* a clearly defined and unequivocal act seeking to make the change is necessary." *Id.* at 875 (emphasis added). The court concluded that a jury could find that the above standard had been met and remanded the matter.

The Court notes that various phrases have been used to describe the level of proof of intent that must be presented to make a lesser showing of overt action acceptable. *See Baker, supra* ("conclusive"); *Criscuolo, supra* ("clearly proved"); *Hawkins, supra* ("clear and convincing"). Of these formulations, "clear and convincing" is the only standard defined in this Court's caselaw. *See Vanerson v. West*, 12 Vet. App. 254, 258 (1999) ("clear and convincing" means proven to a "reasonable certainty" but not necessarily "undebatable"); *Olson v. Brown*, 5 Vet.App. 430, 434 (1993) ("The 'clear and convincing' standard of proof is an intermediate standard of proof between 'preponderance of the evidence' and 'beyond a reasonable doubt,' *see Addington v. Texas*, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)"); *see also Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Having reviewed the cited cases, the Court concludes that the "clear and convincing" standard of proof accurately reflects the proof of intent nec-

essary to trigger the reduced proof-of-overt-action requirement set forth above. However, if a claimant can satisfy only the lowest standard required to carry the claimant's burden of proof, "a preponderance of the evidence," then the claimant may still prevail by meeting a higher level of proof to satisfy the overt-action requirement.

### b. Equivocal Proof of Intent Must Be Supported With More Proof of Overt Action

Where the claimant cannot show clear and convincing evidence of intent, but only shows intent by a preponderance of the evidence, "there must [also] be proof that the insured did by way of an affirmative act all that could reasonably have been expected of him under the existing circumstances to effectuate his intention to change his beneficiary." *Benard v. United States*, 368 F.2d 897, 901 (8th Cir.1966); *see Pahmer*, 238 F.2d at 433 ("the requirement of positive action [is] satisfied if the insured 'has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer.'") (quoting *Roberts v. United States*, 157 F.2d 906, 909 (4th Cir.1946)); *see also Shapiro v. United States*, 166 F.2d 240, 242 (2d Cir.1948); *Mitchell v. United States*, 165 F.2d 758, 760 (5th Cir.1948); *Johnson v. White*, 39 F.2d 793, 795 (8th Cir.1930).

*Collins*, which is cited in *Curtis*, is a typical case from the World War II era. Before his death in service, the insured veteran in *Collins* filled out a VA NSLI change-of-beneficiary form with the assistance of an Army personnel officer. One copy was placed in his Army personnel file and the insured veteran showed the original to his wife (the new beneficiary) before placing it in his desk with his other insurance papers. At that time the insured veteran stated to his wife: " 'If anything happens to me, give this to your father, he will know what to do with it.' " *Id.* at 66. No other statements by the insured veteran evidencing his intent were introduced

into evidence. VA did not receive a copy of the form until after the insured veteran's death when the wife retrieved the original from the insured veteran's desk in accordance with his instructions. The *Collins* opinion held that the change was valid notwithstanding that the form was not sent to VA until after the insured veteran's death. The court in *Collins* concluded:

> It is a general rule that where the insured has manifested an intent to change a beneficiary and has done everything reasonably necessary to accomplish a change, leaving only ministerial acts to be performed, courts of equity will treat as done that which ought to be done, thus effectuating the intent of the insured.
>
> Here we have more than the expressed intent of the insured to change the beneficiary. We have positive and affirmative action on his part. *The insured did everything that was necessary on his part to evidence a change in beneficiary.* He obtained the particular form required by the regulation. He had a civilian employee whose duty it was to assist him fill out the form as required, and signed it. Nothing remained for him to do in order to authorize [VA] to make the change as soon as the notice came to its attention.

*Id.* at 67–68 (internal footnotes omitted) (emphasis added). This test appears to have been applied objectively.

Another example of the application of an overt action requirement is *Pahmer*, which is also cited in *Curtis*. In *Pahmer*, the insured veteran committed suicide and left beside his body a "will" that, inter alia, changed the beneficiary of his NSLI policy from his ex-wife to his mother. Recognizing that the VA regulations had not been complied with, the Court observed: "[T]he requirement of positive action [is] satisfied if the insured has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer." *Id.* at 433. The *Pahmer* court noted that there was no

evidence to contradict the intent expressed in the note and held that "disposing of the writing in such a way that, as he might reasonably have expected, it would come into his mother's possession immediately upon the discovery of his suicide, was enough to accomplish the intended change." *Id.* at 434. We note especially that *Pahmer* indicated that "the action taken to carry out [the] intent [is] enough 'so long as [the insured veteran] might reasonably be supposed to have thought it enough.'" *Pahmer*, 238 F.2d at 433 (quoting *Senato v. United States*, 173 F.2d 493, 495 (2d Cir.1949) (citing *Roberts* and *Mitchell*, both *supra* )). Thus, unlike in *Collins*, the test appears to have been applied largely subjectively.

*Collins* and *Pahmer*, especially when compared with *Berk* and *Tierney*, show that there is no bright-line rule for determining when an insured veteran has done everything he reasonably believed necessary to effectuate his intent. Because this issue of overt action will generally have to be decided by examining the totality of the circumstances, it is important for the claimant to submit and the fact finder to weigh all available evidence on such factors as whether a contested writing was treated by the insured veteran as being legally significant, *see Collins*, *supra*, whether the insured veteran knew of the mailing requirement, *see Berk* and *Tierney*, *supra*, and whether the insured veteran had the opportunity to take further action, *see Pahmer* and *Criscuolo*, *supra*.

## D. THE NSLI TEST

Although the cases cited above tend to use different phrasings in formulating the legal test and presenting their conclusions, the following test can be drawn from those cases. First, a person seeking to show that the NSLI insured veteran had effected a beneficiary change [hereinafter "the claimant"] may prevail by proving that the insured veteran complied with the regulations in filing a valid change of beneficiary with VA. *See Klekar*, 12 Vet.App. at 507

(veteran's signature on change-of-beneficiary note and receipt prior to death is sufficient to satisfy 38 C.F.R. § 8.22); *see also Curtis*, *supra*. Second, if this cannot be shown, then, in order to prevail, the claimant must prove by clear and convincing evidence that the insured veteran intended that the claimant should be the beneficiary and also prove that the insured veteran took an overt action reasonably designed to effectuate that intent. *See Hawkins*; *cf. Berk*, *Baker*, and *Criscuolo*, all *supra* (indicating "clear proof" standard). Third, if the insured veteran's intent cannot be proven by clear and convincing evidence, then the claimant must prove the insured veteran's intent by a preponderance of the evidence and must also prove that the insured veteran did everything reasonably necessary, or at least everything he or she subjectively and reasonably believed was necessary, to effectuate his intention. *See Benard*, *Collins*, *Pahmer*, and *Senato*, all *supra*. As stated in part II.C.1., above, during this process, the claimant always has the burden of proof. *See Baker*, *Bradley*, and *Criscuolo*, all *supra*.

## E. THE BOARD DECISION IN THIS CASE

The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Gilbert*, 1 Vet.App. at 57. To comply with this requirement, the Board must set forth the precise basis for its decision, analyze the credibility and probative value of all material evidence submitted on behalf of the claimant in support of the claim, and provide a statement of its reasons for its rejection of any such evidence. *See*

*Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994).

In this case, the Board did not have an opportunity to evaluate the facts of this case in the context of the test outlined in part II.D., above, as to whether the intervenor carried her burden of proof as to the insured veteran's intent and overt action to effectuate it. Accordingly, its statement of reasons or bases is inadequate to allow the Court to carry out effective judicial review of that decision. *See Allday, Simon,* and *Gilbert,* all *supra.* In this regard, the Court cannot hold, as a matter of law, that this deficiency in the Board's statement of reasons or bases is not prejudicial error, *see* 38 U.S.C. § 7261(b) ("the Court shall take due account of the rule of prejudicial error"); *Winters v. West,* 12 Vet.App. 203, 207 (1999) (en banc), because here, unlike in *Klekar,* the regulation was not satisfied because the change-of-beneficiary letter was not "forwarded to [VA] by the insured or designated agent," *see Collins,* 161 F.2d at 68 (once insured veteran has died, all agency relationships are terminated and anyone sending in change-of-beneficiary writing cannot be said to be acting on insured veteran's behalf), and because it is the Board's responsibility, as the initial finder of fact, to determine whether the intervenor has carried her burden of proof on all necessary elements, *see Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo factfinding but rather to remand to Board for it to find facts in first instance, subject to later review by Court). Therefore, the case must be remanded to the Board for a new decision that applies the test set forth in part II.D., above and that is supported by an adequate statement of reasons or bases with respect to those matters.

■ Finally, although the Court is remanding the appellant's claim for the reasons stated, there is a further matter to be resolved as to an argument made by the appellant that the BVA rightly rejected in its decision. The appellant suggests that a postnuptial agreement between the veter-

an and the intervenor or the will of the veteran, either individually or collectively, precludes the veteran from changing his beneficiary to the intervenor. But documents of this type would not be binding upon VA except to the extent that they change the beneficiary of the veteran's NSLI policy pursuant to the requirements of 38 U.S.C. § 1917(a) and 38 C.F.R. § 8.22 or the requirements of this opinion. *See Wolfe,* 11 Vet.App. at 2 (under Supremacy Clause of U.S. Constitution, only federal law and regulations are relevant to determining validity of change of NSLI beneficiary). Thus, because both the postnuptial agreement and the will are silent as to the NSLI policy, because they both predate the purported change-of-beneficiary letter by six years, and because the postnuptial agreement specifically allows the parties to make explicit gifts and bequests to each other, the appellant's claim that they are preclusive must fail. The Board should not address that argument again. These documents, nevertheless, could bear on the veteran's intent and should be addressed by the Board in that context.

## III. CONCLUSION

Upon consideration of the above, the March 26, 1997, BVA decision is VACATED and the matter is REMANDED for further proceedings consistent with this opinion. Upon remand the parties will be free to submit additional argument and evidence in accordance with *Kutscherousky v. West,* 12 Vet.App. 369 (1999) (per curiam order).