On Appeal from the Board of Veterans’ Appeals
SCHOELEN, Judge:
The appellant, Karen Gordon, through counsel, appeals an October 17, 2002, Board of Veterans’ Appeals (Board or BVA) decision that denied her claim, on behalf of her two minor children (Kelin A. Gordon and Hunter M. Gordon), for equal shares of the proceeds of the National Service Life Insurance (NSLI) policy of her deceased father, Edward E. Gordon. Beth G. Samargin, another one of Mr. Gordon’s daughters, is an Intervenor in this case. The Board determined that Ms. Samargin’s two minor children (Aline E. Wylie and Kristiana L. Wylie) were the only beneficiaries under the policy. Record (R.) at 1-13. The appellant and the Secretary filed briefs. Additionally, Ms. Gordon and the Secretary filed supplemental briefs and a supplemental memorandum of law. Ms. Samargin did not file any briefs in this case. This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Because VA failed to provide the appellant VCAA notice as to the information and evidence necessary to substantiate her *273 claim, the Court will vacate and remand the Board decision for further proceedings consistent with this opinion.
I. BACKGROUND
In September 1943, Veteran Edward E. Gordon purchased a $10,000 NSLI policy. R. at 17. In December 1992, a VA regional office (RO) received a properly witnessed “Declaration of Beneficiary” form signed by Mr. Gordon. R. at 47. In that document, two of his granddaughters, Aline E. Wylie and Kristiana L. Wylie, the daughters of Ms. Samargin, were named principal beneficiaries. Each was designated to take half of the proceeds of the policy. Id.
The veteran died in August 1995. R. at 64. On September 11,1995, Ms. Samargin notified the RO of her father’s death and filed a claim for the proceeds of his NSLI policy on behalf of her minor children (Aline and Kristiana). R. at 63.
On October 13, 1995, Ms. Gordon filed a claim seeking a portion of the proceeds of Mr. Gordon’s NSLI policy on behalf of her two children (Kelin and Hunter). R. at 91-93. In support of her claim, she submitted a copy of a 1994 divorce settlement agreement between Mr. Gordon and Martha Gordon, her mother. Under the terms of the divorce settlement agreement, Mr. Gordon agreed to name each of his four grandchildren as co-beneficiaries of his NSLI policy. R. at 79-82. The pertinent provision of the divorce settlement agreement provided:
1. That husband is awarded as his sole and exclusive property the ownership and accumulated cash value of the National Service Life Insurance policy on his life.
2. That as long as said policy remains in effect, husband shall name his following grandchildren as equal co-beneficiaries on said policy: Aline, Kristiana, Ke-lin, and Hunter.
R. at 53.
On October 20, 1995, the RO and insurance center issued an administrative decision that disallowed Ms. Gordon’s claim. R. at 95. The RO determined that the proceeds of the NSLI policy were payable to Aline and Kristiana Wylie in accordance with Mr. Gordon’s December 1992 beneficiary designation. Id. In December 1995, Ms. Gordon appealed the RO decision. R. at 406. In April 1996, the RO issued a Statement of the Case (SOC). R. at 115— 20. In August 1997, Ms. Gordon testified at an RO hearing that the veteran stated that he intended to include Kelin and Hunter as co-beneficiaries on the NSLI policy “but did not get around to doing it.” R. at 138-39. In her Substantive Appeal, Ms. Gordon asserted that the 1994 divorce decree and her father’s verbal promises to her and her two children indicated his intent to make a beneficiary change, but that Mr. Gordon had a history of “not getting around to things ... in a timely manner” and that he “was very sick [and] possessed little energy.” R. at 122.
In December 1997, the RO and insurance center issued a Supplemental SOC (SSOC) indicating that “there was no evidence that the insured either intended and/or took the required action to make a beneficiary change subsequent to the designation of December 15, 1992.” R. at 168.
In January 1999, the Board granted Ms. Gordon’s claim for equal shares on behalf of her sons. R. at 172-79. The Board found that the divorce settlement agreement was the “last expression” of the appellant’s intent and that the filing of the 1994 divorce decree in state court showed evidence of an overt act to make such a change. R. at 179.
Ms. Samargin appealed the January 1999 Board decision to this Court. R. at *274 180-82. Ms. Gordon was not a party to the appeal before the Court. In February 2000, Ms. Samargin and the Secretary moved the Court for an order remanding this appeal for consideration of Fagan v. West, 13 Vet.App. 48 (1999), which was issued subsequent to the January 1999 Board decision. R. at 193-96. In February 2000, the Court granted the joint motion for remand. R. at 192.
In January 2001, the Board issued a decision finding that Ms. Gordon’s minor children were not among the beneficiaries of the veteran’s NSLI policy. R. at 214-21. The Board, after considering Fagan, found that although there was clear and convincing evidence of the veteran’s intent to change the beneficiaries of his NSLI policy, he never performed an overt act sufficient to further his intent to change the beneficiaries of the policy. R. at 219-21.
In May 2001, Ms. Gordon, through counsel, appealed that decision to the Court.[1] Ms. Samargin was not a party to the appeal before the Court. In June 2001, the Secretary moved, unopposed, to remand the matter for consideration of the applicability of the Veterans Claims Assistance Act of 2000 (VCAA), Pub.L. No. 106-475, 114 Stat. 2096, in accordance with this Court’s decision in Holliday v. Principi, 14 Vet.App. 280 (2001). R. at 237-41. In September 2001, the Court granted the Secretary’s motion. R. at 236.
On April 26, 2002, the Board notified Ms. Gordon’s attorney that she had 90 days from the date of the letter to submit any additional evidence or argument in support of Ms. Gordon’s claim. R. at 246-47. There is no indication in the record that Ms. Gordon’s attorney responded to this letter. On October 17, 2002, the Board issued the decision now on appeal. R. at 1-12. The Board found that the divorce settlement was clear and convincing evidence of the veteran’s intent to change his beneficiary. However, it concluded that there was no evidence that the veteran had performed an overt act reasonably designed to effectuate his intent to change his beneficiaries. R. at 11. The appellant appealed the 2002 Board decision to this Court.
II. PARTIES’ CONTENTIONS
Ms. Gordon raises several arguments before the Court. She asserts as follows: (1) VA failed to fulfill its notice obligations under 38 U.S.C. § 5103(a) (Appellant’s Brief (Br. at 8-12)); (2) the Board provided an inadequate statement of reasons or bases for its decision as a result of its failure to discuss whether a VA hearing officer complied with the requirement in 38 C.F.R. § 3.103(c)(2) (2006) to suggest the submission of evidence favorable to a claimant (Appellant’s Br. at 13-16); (3) VA failed to consider Ms. Gordon’s argument that her father’s incapacity rendered him incapable of effectuating the change in beneficiary (Appellant’s Br. at 16-17).
The Secretary counters that because an NSLI beneficiary claimant is not a “claimant” within the meaning of 38 U.S.C. §§ 5100 and 5103(a), VA did not have duty to provide Ms. Gordon with any section 5103(a) notice. Appellee’s Br. at 11-12. Alternatively, he maintains that the appellant was adequately notified of her rights under the VCAA and any notice error was not prejudicial. Id. at 13-19. Finally, the Secretary submits that there is a plausible basis for the Board’s finding that the veteran did not make an overt act in further- *275 anee of his intent to change the beneficiaries of his NSLI policy. Id. at 20-23.
III. ANALYSIS
A. NSLI Beneficiary Claims
The NSLI is a benefit program found in part II (pertaining to “GENERAL BENEFITS”), chapter 19 of title 38 of the U.S.Code. An NSLI policy is a contract between a veteran and the U.S. Government. See 38 U.S.C. § 1917. See White v. United States, 270 U.S. 175, 46 S.Ct. 274, 70 L.Ed. 530 (1926); Wolfe v. Gober, 11 Vet.App. 1, 2 (1997). Under section 1917, the insured veteran has the right to change the beneficiary of an NSLI policy at any time, with or without the knowledge or consent of any present or prior beneficiaries. See 38 U.S.C. § 1917(a); 38 C.F.R. § 8.19 (2006); see also Wissner v. Wissner, 338 U.S. 655, 658, 70 S.Ct. 398, 94 L.Ed. 424 (1950); Young v. Derwinski, 2 Vet.App. 59 (1992). VA will not recognize a beneficiary change unless there is evidence of an insured’s intent to make a change in the designated beneficiary and an affirmative act to effectuate that intent. In Fagan v. West, 13 Vet.App. 48 (1999), the Court set forth the test to determine whether an NSLI-in-sured veteran had effected a beneficiary change:
First, a person seeking to show that the NSLI insured veteran had effected a beneficiary change [hereinafter “the claimant”] may prevail by proving that the insured veteran complied with the regulations in filing a valid change of beneficiary with VA. Second, if this cannot be shown, then, in order to prevail, the claimant must prove by clear and convincing evidence that the insured veteran intended that the claimant should be the beneficiary and also prove that the insured veteran took an overt action reasonably designed to effectuate that intent. Third, if the insured veteran’s intent cannot be proven by clear and convincing evidence, then the claimant must prove the insured veteran’s intent by a preponderance of the evidence and must also prove that the insured veteran did everything reasonably necessary, or at least everything he or she subjectively and reasonably believed was necessary, to effectuate his intention.... [Djuring this process, the claimant always has the burden of proof.
13 VetApp. at 57 (citations omitted). Further, the Court held that, “[b]ecause this issue of overt action will generally have to be decided by examining the totality of the circumstances, it is important for the claimant to submit and the fact finder to weigh all available evidence on such factors as whether ... the insured veteran had the opportunity to take further action.” Id. (citing Criscuolo v. United States, 239 F.2d 280, 282 (7th Cir.1956) (recognizing a change in beneficiary, in part, based upon a veteran’s inability to complete the beneficiary form because of physical incapacity)).
When questions arise regarding the “denial of applications for insurance” or “dis-allowance of claims for insurance benefits,” the claimant has a right to appeal that decision to the Board by initiating a Notice of Disagreement. See 38 C.F.R. § 8.30 (2006) (“[t]he provisions of Part 19 of this chapter will be followed in connection with appeals to the Board of Veterans!’] Appeals involving questions pertaining to the denial of applications for insurance, total disability income provision, or reinstatement; disallowance of claims for insurance benefits.... ”).
B. Applicability of the VCAA Notice Provisions to Claims for NSLI Benefits
The VCAA was enacted “to reaffirm and clarify the duty of the Secretary *276 of Veterans Affairs to assist claimants for benefits under laws administered by the Secretary.” 146 Cong. Rec. H9,912 (daily ed. Oct. 17, 2000) (statement of Rep. Stump); see 146 Cong. Reo. S9,205 (daily ed. Sept. 25, 2000) (statement of Sen. Brownback for Sen. Specter). The VCAA made a series of amendments to chapter 51 (“CLAIMS, EFFECTIVE DATES, AND PAYMENTS”) of title 38, U.S.Code, which, included adding 38 U.S.C. § 5100 to define the term “claimant”; amending 38 U.S.C. § 5102(b) to require that the Secretary inform “claimants” who submit incomplete applications of the information necessary to complete the application; amending 38 U.S.C. § 5103(a) to address the Secretary’s duty to notify claimants of required information and evidence necessary to substantiate their claims; adding 38 U.S.C. § 5103A to address the Secretary’s duty to assist claimants in developing evidence pertinent to their claims.
Section 38 U.S.C. § 5100 defines a “claimant” as “any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary.” The Secretary’s duties under the VCAA essentially fall into two categories: Collecting evidence that could result in a successful claim, see 38 U.S.C. § 5103A, and giving notice to a claimant. Pursuant to 38 U.S.C. § 5102(b), if the Secretary receives an incomplete “application for a benefit under the laws administered by the Secretary,” he is charged with the duty of notifying “the claimant ... of the information necessary to complete the application.” Pursuant to section 5103(a), “[u]pon receipt of a complete or substantially complete application” the Secretary is obligated to notify the claimant of any information ... not previously provided to the Secretary that is necessary to substantiate the claim” and who is responsible for providing such information or evidence.
The Secretary argues that the notice provisions of 38 U.S.C. § 5103(a) do not apply to individuals seeking the proceeds of an NSLI policy because such individuals are not “claimants” within the meaning of 38 U.S.C. § 5100. Secretary’s Br. at 11. The Court interprets a statute de novo. See Butts v. Brown, 5 Vet.App. 532, 539 (1993) (en banc). A fundamental principal of statutory construction is that “[t]he starting point in interpreting a statute is its language.” Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993); Lee (Raymond) v. West, 13 Vet.App. 388, 394 (2000). Furthermore, “ ‘each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.’ ” Meeks v. West, 12 Vet.App. 352, 354 (1999) (quoting 2A N. SingeR Sutherland ON Statutory Construction § 46.01 (5th ed.1992)), aff'd, 216 F.3d 1363 (Fed.Cir.2000); see Cottle v. Principi 14 Vet.App. 329, 334 (2001); Talley v. Derwinski, 2 Vet.App. 282, 286 (1992). In this regard, one section of a statute should not be read in isolation from the context of the whole act. The Court does not look to a single sentence or part of a sentence, but looks to the provisions of the “ ‘whole law, and to its object and policy.’ ” Moreau v. Brown, 9 Vet.App. 389, 396 (1996) (quoting Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)).
The “plain meaning [of a statute] must be given effect unless a ‘literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.’ ” Gardner v. Derwinski, 1 Vet.App. 584, 586-87 (1991), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); Lee, 13 Vet.App. at 394. Therefore, “[i]f the intent of Congress is clear, that is the end of the matter.” Skinner v. Brown, 27 F.3d *277 1571, 1572 (Fed.Cir.1994) (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).
The Secretary contends that a person claiming to be a beneficiary under an NSLI policy is not a “claimant”, within the meaning of section 5100, because the proceeds of the NSLI policy are not “benefits” within the meaning of the statute and instead are merely proceeds, resulting from a contract between the veteran and VA. Secretary’s Br. at 11-12. He attempts to make a distinction between veterans who apply for NSLI policies and beneficiaries who seek proceeds under the policies. Id. He argues that veterans are claimants but beneficiaries are not. Id.
The Court is not persuaded by this argument. Section 5100 governs the definition of “claimant” for the purposes of chapter 51. It provides that the term “ ‘claimant’ means any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary.” 38 U.S.C. § 5100. VA regulations define a “claim” as a written request for “determination of entitlement ... to a benefit.” 38 C.F.R. § 3.1(p) (2005); see also 38 C.F.R. § 20.3(f) (2006) (defining “claim” as, inter alia, an “application made under title 38, United States Code, and implementing directives for entitlement to [VA] benefits.”).
The statute does not define the term “benefit.” However, a fundamental canon of statutory construction is that when interpreting a statute, the words of a statute are given “their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.” Williams v. Taylor, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); Smith (John Angus) v. United States, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (citing Perrin v. United States, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199, (1979)) (stating that “words [in a statute], unless otherwise defined, will be interpreted as taking their ordinary, contemporary, common meaning.”). The term “benefit” is defined in its common, ordinary usage to mean a “payment made by an insurance company, public agency, welfare society, etc., as during sickness, retirement, unemployment, etc. or for death.” WebsteR’s New WoRld Dictionary of American English 129 (3d. College Edition 1988). The Court also notes that VA regulations define the term “benefits” to mean “any payment, service, commodity, function, or status, entitlement to which is determined by the laws administered by the Department of Veterans Affairs pertaining to veterans and survivors.” 20 C.F.R. § 20.3(e).
The only limiting criteria imposed by the plain language of section 5100 is that the “claimant” must be seeking a “benefit under the laws administered by the Secretary.” There is no question that the NSLI program was created by congressional statute and that the Secretary is charged with the authority to administer the program under the standards created by Congress. Indeed, as the Secretary recognizes in his brief, NSLI policies “ ‘are governed by federal statutes and regulation^] [in] determining who is to share in the benefits arising from such policies.’” Secretary’s Br. at 11 (quoting Smith (James E.) v. United States, 226 F.Supp. 656, 658 (W.D.Ark.1964)); see also Curtis v. West, 11 Vet.App. 129, 132 (1998) (“[T]he construction of a life insurance policy issued by the United States is governed by federal law.”). The fact that Congress chose to have the proceeds of the NSLI policies flow to beneficiaries through the mechanism of a statutorily created contract does not change the character of the proceeds. They are “benefits *278 under the laws administered by the Secretary.”
The Secretary is correct that the veteran’s “benefit” under the NSLI program is different from the NSLI beneficiary’s “benefit.” On the one hand, the “benefit” to the veteran is the ability to purchase life insurance at a relatively low cost, to provide for his family after his death. On the other hand, the “benefit” to the beneficiary is the monetary proceeds under the policy. The Court rejects the Secretary’s argument that the term “benefit” as used by the statute requires VCAA notification for veterans’ claims under the NSLI program but not for NSLI beneficiary claims. The language in section 5100 broadly defines “claimant” as an “individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary.” (Emphasis added). The statute clearly applies to any benefit that a claimant seeks and makes no distinction that would exclude certain types of “benefits.” The Court similarly refuses to draw the distinction urged by the Secretary that has no basis in the statutory language itself. See Jones v. Brown, 41 F.3d 634, 640 (Fed.Cir.1994) (holding that because the statutory phrase “case pending” in section 506 of the Federal Court’s Administration Act of 1992 made no distinction between the fee application stage of a case and consideration of the case on the merits, the court would likewise make no distinction). Thus, while there is a difference in the nature of the “benefits” flowing to the veteran and his beneficiary, each “benefit” is governed by .the terms and conditions set forth in the Federal laws enacted by Congress and “administered by the Secretary.” As such, both veteran and beneficiary are “claimants” seeking “benefits” within the meaning of section 5100.
In Livesay v. Principi, 15 Vet.App. 165, 179 (2001) (en banc), this Court recognized that a “claimant” within the meaning of section 5100 includes a “person applying for or seeking benefits under part II [“GENERAL BENEFITS”] or III [“READJUSTED AND RELATED BENEFITS”] of title 38.” In Livesay, the Court determined that the VCAA did not apply to claims for revisions of decisions based on clear and unmistakable error [CUE] because a CUE litigant is not pursuing a claim for benefits under parts II or III of chapter 38, but rather is collaterally attacking a final decision pursuant to parts IV (“GENERAL ADMINISTRATIVE PROVISIONS”), or V (“BOARD, ADMINISTRATIONS, AND SERVICES”) of title 38. See also Sims v. Nicholson, 19 Vet.App. 453, 456 (2006) (holding VCAA notice not applicable to applications for restoration of competency; applicant is not seeking benefits under chapter 51 of title 38, but, rather, is seeking a decision regarding how his benefits will be distributed under chapter 55 (“Minors, Incompetents, and other Wards”)); Lucras v. Principi, 18 Vet.App. 435, 439 (2004) (holding VCAA does not apply to claims for waiver of overpayment of pension benefits under chapter 53 because an applicant for waiver of overpayment is not seeking benefits under chapter 51; rather the applicant is requesting a waiver of recovery of indebtedness). As discussed earlier, the NSLI benefit program is located within part II (“GENERAL BENEFITS”) of title 38. Thus, when viewed within the context of title 38, NSLI-beneficiary claimants are “claimants” within the meaning of section 5100.
The Secretary’s argument also ignores the plain language of section 5103(a). That section provides:
§ 5103. Notice to claimants of required information and evidence
(a) Required information and evidence. Upon receipt of a complete or substan *279 tially complete application, the Secretary shall notify the claimant and the claimant’s representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.
(b) Time limitation.
(1) In the case of information or evidence that the claimant is notified under subsection (a) is to be provided by the claimant, such information or evidence must be received by the Secretary within one year from the date such notice is sent.
(2) This subsection shall not apply to any application or claim for Government life insurance benefits.
(3) Nothing in paragraph (1) shall be construed to prohibit the Secretary from making a decision on a claim before the expiration of the period referred to in that subsection.
In summary, subsection (a) sets forth the Secretary’s notice obligations. Subsection (b)(1) sets forth a one-year limit, which begins to run after subsection 5103(a) notice has been provided, to submit the information or evidence specified in 5103(a). Section 5103(b)(3) authorizes the Secretary to make a decision on a claim prior to the expiration of the one-year period for submitting the information or evidence identified under subsection (a). Subsection (b)(2) expressly provides that the time limitation in subsection (b) does not apply “to any application or claim for Government life insurance benefits.” A plain reading of the statute indicates that section 5103(a) notice is to be provided to all claimants for VA benefits. Unlike other “claimants,” an individual who files an “application or claim for Government life insurance benefits” is not limited to one year to submit the information or evidence that the Secretary notified the claimant that he may provide to substantiate the claim.[2]
If the Secretary were correct that section 5103(a) notice did not apply to NSLI beneficiary claims, there would be no need for the section 5103(b)(2) exception. This Court has recognized the canon of statutory construction that “legislation must be construed in light of the venerable rule that “where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.’ ” Dippel v. West, 12 Vet.App. 466, 474 (1999) (quoting Gardner, 513 U.S. at 120, 115 S.Ct. 552 (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))); see also Lee (Raymond), 13 Vet.App. at 396. Clearly, if Congress had *280 intended that the Secretary’s section 5103(a) notice obligations did not apply to NSLI beneficiary claimants, Congress, we believe, would have made its intention clear in the statute and used language to that effect. After examining the plain meaning of sections 5100 and 5103, it is clear that Congress intended that a “claimant” for VCAA purposes includes an individual seeking the proceeds of a deceased veteran’s NSLI policy.
Our dissenting colleague raises numerous concerns with this determination; however, these concerns are either unfounded or matters of policy to be addressed not in a court of law, but rather by the executive or legislative branches. See Republican Party of Minn. v. White, 536 U.S. 765, 798, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). For example, concern that the VCAA should not be made applicable to adversarial proceedings where the Secretary is a stakeholder is a policy matter. Significantly, however, the statutes and regulations governing the VA contemplate adversarial proceedings on claims, see 38 U.S.C. § 7105A (simultaneously contested claims); 38 C.F.R. §§ 19.100-102, 20.500-504, 20.713, 20.1408 (2006), and there is no indication in these provisions that competing claimants are not entitled to VCAA notice. Indeed, it is well settled that surviving spouses seeking benefits are entitled to VCAA notice, see Sachs v. Principi, 14 Vet.App. 298 (2001); see also Valiao v. Principi, 17 Vet.App. 229 (2003), even though there may be competing claims for benefits where “the validity and legal effects of marriage (ceremonial or otherwise), divorce, ostensible marriage, void marriage and adoption or legitimacy of children” are at issue, VA AdjudicatioN PROCEDURE Manual M21, part IV, ch. 5, § 5.05; see also id. at § 5.03 (requiring VA to “[simultaneously develop contested claims, giving all interested parties every opportunity to submit all available evidence”).
Further, the concern that VCAA notice might now be required for claims filed in Federal district court is unfounded. Such notice is required when a claim is filed with the Secretary. See 38 U.S.C. § 5103(a). Under the statutory scheme, a suit may not be commenced in a Federal district court until after the Secretary makes a initial decision on a beneficiary claim. See 38 U.S.C. § 1984(a) and (h). Because VCAA notice is required to be provided to a claimant prior to VA’s initial decision on such a claim, whether litigation ensues in Federal district court is irrelevant. Finally, the concern that multiple VCAA notices will now be required, creating “continuous mini-adjudications” also is unfounded. All that is required is that each claimant for benefits be provided the notice required by section 5103(a).
C. VCAA Notice
Section 5103(a) of title 38, U.S.Code, requires the Secretary to inform a claimant of any information and evidence not of record (1) that is necessary to substantiate the claim, (2) that the Secretary will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. See Quartuccio v. Principi, 16 Vet.App. 183, 187 (2002). Further, VA will “request that the claimant provide any evidence in the claimant’s possession that pertains to the claim.” 38 C.F.R. § 3.159(b)(1) (2006); see Pelegrini v. Principi, 18 Vet.App. 112, 121 (2004). The Court refers to these notice requirements as notice elements. Section 5103(a) was enacted to ensure that VA advise claimants, early in the claims process, of what information is necessary to substantiate their claims and who would be responsible for obtaining that information. Pelegrini, 18 Vet.App. at 120-22; see also Mayfield v. Nicholson, 444 F.3d 1328, 1333 (Fed.Cir.2006). Thus, the no *281 tice required under statutory section 5103(a) and regulatory § 3.159(b) must be provided upon receipt of a complete or substantially complete application for benefits and before an initial unfavorable decision on a claim by an agency of original jurisdiction. Id.; see Pelegrini, 18 Vet.App. at 120. As the Federal Circuit recognized in Mayfield, Congress envisioned a deliberate act of notification directed to meeting the requirements of section 5103. Mayfield, 444 F.3d at 1333. A timing error may be cured, however, by a Board remand to the RO for a new VCAA notification followed by a readjudication of the claim. Mayfield, supra. Failure to comply with any of these requirements may constitute remandable error. Quartuccio, 16 Vet.App. at 187.
A Board determination of whether section 5103(a) statutory and regulatory notice requirements have been complied with is “a substantially factual determination.” Mayfield, 444 F.3d at 1335. The Board’s findings of fact are reviewed under the “clearly erroneous” standard of review in 38 U.S.C. § 7261(a)(4). Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990). In determining whether a finding is clearly erroneous, the Court is not permitted to substitute its own judgment for that of the Board on issues of material fact. Id. at 53. Under this standard of review, the Court must set aside a finding of material fact when, after reviewing the record as a whole, it is “ ‘left with the definite and firm conviction that a mistake has been committed.’ ” Id. at 52 (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).
Board error is assessed under the rule of prejudicial error. 38 U.S.C. § 7261(b)(2). If a notice error has been committed, we must “take due account of the rule of prejudicial error.” Id.; see Conway v. Principi, 353 F.3d 1369, 1374-75 (Fed.Cir.2004); Overton v. Nicholson, 20 Vet.App. 427, 433 (2006). Because VCAA notice error is inherently prejudicial, the burden shifts to the Secretary to demonstrate that there was no error or that the appellant was not prejudiced by any failure to give notice. Sanders v. Nicholson, 487 F.3d 881 (2007).
Here, the appellant asserts that VA failed to satisfy its duty to provide VCAA-compliant notice as to all four VCAA notice elements. Appellant’s Br. at 8-12. Because Ms. Gordon’s claim was on appeal before VA in November 2000, and thus was pending at VA at the time of the VCAA’s enactment, the VCAA applied to her claim. See Pelegrini, supra.
In its 2002 decision, the Board stated:
[T]he Board finds that the RO & IC [Insurance Center] notified both parties of the reason for its decision, as well as the laws and regulations applicable to his claim. This information was provided in the April 1996 Statement of the Case, and in the November 1997 Supplemental Statement of the Case.
Numerous letters have been sent to both parties. In October and November 1995, the RO & IC sent letters to both parties telling them that the appellant’s claim had been denied. The appellant was afforded a hearing in August 1997, and the appellee was provided information about the hearing. Letters were written to the appellant and the appellee in October 1997 asking them to provide more information about their parents’ settlement agreement. A letter was also sent to the attorney who prepared the agreement, asking him for information about the agreement. The claims folder is replete with letters and reports of contact between VA and the interested parties. In short, the RO & IC ha[ve] informed the appellant and appellee which information and evidence that the *282 appellant was to provide to VA and which information and evidence that the VA would attempt to obtain on behalf of the appellant.
R. at 6.
We hold that the Board erroneously relied on postdecisional documents in the record, which were unrelated to section 5103(a) notice, to conclude that Ms. Gordon had been provided adequate section 5103(a) and § 3.159(b) notice. Mayfield, 444 F.3d at 1335. The timing error in this case was not cured by VCAA notification followed by a readjudication of the claim. Mayfield, supra. In this case, Ms. Gordon never received any notice that was directed to satisfying the requirements of section 5103(a). Additionally, nothing in the record relied upon by the Board indicates that Ms. Gordon was ever adequately informed of what evidence was necessary to substantiate her NSLI beneficiary claim. The Secretary’s failure to satisfy the first VCAA requirement necessarily subsumes a conclusion that he also failed to satisfy the second and third VCAA elements.
Therefore, having established first-element VCAA notice error, the burden shifts to the Secretary to demonstrate a lack of prejudice in terms of the fairness of the adjudication and opportunity for Ms. Gordon’s meaningful participation in the processing of her claim. The Secretary has failed to meet his burden in this case to show that the error was not prejudicial. The Secretary argues that any first-element VCAA notice error was nonprejudicial because the appellant “had actual knowledge of the evidence required to substantiate her claim and that a reasonable person could be expected to understand from the notice provided by VA what was needed to substantiate her claim.” Secretary’s Supplemental Br. at 5.
The only documents relied upon by the Secretary to demonstrate a lack of prejudice are all postdecisional documents that could not have assisted Ms. Gordon in participating in the initial adjudication of her claim, particularly where there was no VCAA notification followed by a readjudi-cation of the claim. See Overton, 20 Vet.App. at 443 (holding that VA could not rely on a June 2002 SSOC, which was a postde-cisional document to satisfy its burden to demonstrate that a first-element VCAA error was nonprejudicial); cf. Medrano v. Nicholson, 21 Vet.App. 165, No. 04-1009, 2007 WL 1201524 (Apr. 23, 2007) (holding that VCAA timing-notice error was nonprejudicial where following postadjudicato-ry, content-complaint VCAA notice, the veteran affirmatively indicated, through counsel, that he had no further evidence to submit; returning the claim to the RO would have resulted in a readjudication of the matter on exactly the same evidence and law previously considered by RO).[3] Moreover, despite the Secretary’s argument to the contrary, the record does not demonstrate that Ms. Gordon had knowledge of the evidence and information needed to substantiate her claim, particularly with regard to the evidence needed to support her assertion that her father was *283 unable to effectuate his intent because of incapacity. See Fagan, supra.
The Court also notes that it appears that Ms. Gordon was represented by her former counsel from May 2001 until October 17, 2002, the date of the Board decision on appeal. However, there is nothing in Ms. Gordon’s former counsel’s actions and communications to VA that demonstrate that the appellant had a meaningful opportunity to participate effectively in the processing her claim. See R. at 243-44. Therefore, we conclude that the Secretary has not met his burden of demonstrating a lack of prejudice. Because we are not convinced that Ms. Gordon was able to meaningfully participate in the adjudication of this claim, we cannot conclude that the presumed notice error was nonprejudicial. Accordingly, a remand is required to correct that error and to provide VCAA-compliant notice.
The Court does not need to address the other issues that Ms. Gordon has raised on appeal at this time.[4] On remand, Ms. Gordon is free to submit additional evidence and raise these arguments to VA, and VA must address any such evidence and arguments. See Best v. Principi, 15 Vet.App. 18, 20 (2001) (per curiam order); Kutscherousky v. West, 12 Vet.App. 369, 372 (1999) (per curiam order).
IV. CONCLUSION
Upon consideration of the foregoing, the October 17, 2002, Board decision is VACATED and that matter is REMANDED to the Board for further adjudication consistent with this opinion.
LANCE, Judge, filed a dissenting opinion.

. The appellant's current counsel did not represent the appellant in the 2001 appeal to the Court.

. The Court also notes that 38 U.S.C. § 5102 mirrors section 5103. Section 5102(b)(2) requires the Secretary to notify a claimant who submits an incomplete application for VA benefits as to what is needed to complete the application. Section 5102(c)(1) provides that following notification from VA of the information needed to complete an incomplete application, the statute provides a one-year limit within which the claimant may submit the information. Like section 5103(b)(2), section 5102(c)(2) states that the one-year limit does not apply to “any application or claim for Government life insurance benefits.” In 2003, Congress amended section 5102 and added the language in subsection (c) to mirror section 5103(b)(2). See Pub.L. No. 1 OS-183, Title VII, § 701(a), 117 Stat. 2670 (Dec. 16, 2003).

. Our dissenting colleague would find that Ms. Gordon waived her right to proper notice because she did not submit additional evidence after being afforded the opportunity to do so. Although there is no doubt that Ms. Gordon may waive her right to have proper notice provided to her, such a waiver must be informed and voluntary to be effective. See Janssen v. Principi, 15 Vet.App. 370, 374 (2001) (citing United States v. Olano, 507 U.S. 725, 732-33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In the absence of content-compliant VCAA notice or actual knowledge as to the information necessary to substantiate her claim, the appellant’s failure to submit additional evidence cannot constitute a waiver of the right to notice of the information necessary to substantiate a claim.

. We need not address the notice provided to the intervenor, Ms. Samargin, because that issue is simply not before us.