LANCE, Judge,
dissenting:
I must respectfully dissent from the majority’s decision to award EAJA fees in this matter. As an initial note, while the majority cites Ozer v. Principi, 16 Vet.App. 475, 479 (2002) to support its contention that “a dissent in the underlying merits decision” “is not a dispositive factor in the Court’s consideration of whether the Secretary’s litigating position was substantially justified,” Ozer did not rest on those grounds. The Court in Ozer found that the dissenting opinion supported the conclusion that the Secretary’s position was justified. Id. While a dissenting opinion may not be a decisive factor, it is nonetheless a factor that the majority fails to consider. Instead, the majority brushes off the problems raised by construing an NSLI dispute as a “claim” without any analysis, as it did in the merits decision. In fact, the majority fails to cite to a single case where the Secretary’s position was found to be not substantially justified after a divided panel decision or to present any useful framework for deciding when to discount a dissent. Nonetheless, my primary objection to granting the EAJA application in this case is my belief that EAJA was intended to apply only to claims against the Government and not to disputes between private parties where the Government is merely a stakeholder.
I. THE PLAIN LANGUAGE OF THE EAJA STATUTE
The question of whether section 2412(d)(1)(A) applies in the context of NSLI proceedings is one of statutory interpretation. “Statutory interpretation begins with the language of the statute the plain meaning of which we derive from its text and its structure.” Myore v. Nicholson, 489 F.3d 1207, 1211 (Fed.Cir.2007) (quoting McEntee v. MSPB, 404 F.3d 1320, 1328 (Fed.Cir.2005)). “In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself.” Sursely v. Peake, 22 Vet.App. 21, 24 (2007) (citing Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))). “ ‘[E]ach part or section [of a statute] should be *275 construed in connection with every other part or section so as to produce a harmonious whole.’ ” Meeks v. West, 12 Vet.App. 352, 354 (1999) (alteration in original) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed.1992)); see Sweitzer v. Brown, 5 Vet.App. 503, 505 (1993); see also Gardner v. Derwinski 1 Vet.App. 584, 586 (1991) (“Determining a statute’s plain meaning requires examining the specific language at issue and the overall structure of the statute.”), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); Johnson v. Brown, 9 Vet.App. 369, 371 (1996) (“[I]f ‘the plain meaning of a statute is discernible, that plain meaning must be given effect.’ ” (quoting Tollman v. Brown, 7 Vet.App. 453, 460 (1995))); Smith v. Derwinski, 2 Vet.App. 429, 431 (1992) (“[W]hen a reviewing court ‘find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.’ ” (second alteration in original) (quoting Demarest v. Manspeaker, 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991))).
EAJA requires that the civil action for which fees are sought be “brought against the United States.” See 28 U.S.C. § 2412(d)(1)(A) (“[A] Court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., including proceedings for judicial review of agency action, brought by or against the United States.... ” (emphasis added)). In the instant case, the Secretary’s role in NSLI proceedings is that of a “neutral stakeholder.” Gordon v. Nicholson, 21 Vet.App. 270, 283 (2007) (Lance, J., dissenting). In essence, the legal dispute here was one between the appellant (Ms. Gordon on behalf of her two children, Kelin and Hunter) and the other purported beneficiary under the policy (Ms. Samargin on behalf of her minor children, Aline and Kristiana). Id. at 273. In such an NSLI proceeding, there is generally no civil action “brought against” the Government. Therefore, based on the plain language of section 2412(d)(1)(A), in this context an award of attorney’s fees would be inappropriate.
II. THE LEGISLATIVE HISTORY OF EAJA
A review of the legislative history of EAJA confirms that NSLI proceedings were not the type of action Congress intended to be covered under EAJA. “Concerned that the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation, Congress enacted the EAJA, waiving the United States’ sovereign immunity and general statutory immunity to fee awards and creating a limited exception to the ‘American Rule’, against awarding attorneys fees to prevailing parties.” Pierce v. Underwood, 487 U.S. 552, 575, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citing S. Rep. No. 96-253, at 1-6 (1979)). “Under the American Rule, each party pays its own attorney’s fees; a prevailing party cannot recover attorney’s fees from a losing party absent express statutory authority or bad faith unless the litigation involves a common fund or confers a substantial benefit on an ascertainable group.” Johnson v. U.S. Dep’t of Hous. and Urban Dev., 939 F.2d 586 (1991) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).
Congress prefaced EAJA with a statement purpose: “The bill rests on the premise that certain individuals ... may be deterred from seeking review of, or defending against, unreasonable govern *276 mental action because of the expense involved in securing the vindication of their rights.” H.R.Rep. No. 96-1418, at 5 (1980) (emphasis added). “The exception created by [EAJA] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights.” Id. at p. 10. As with the plain language of the statute, the legislative history makes clear that the crux of the EAJA’s applicability is the party against whom the adversarial dispute lies. As noted above, the adversarial nature of disputes arising over NSLI proceeds pertains to the purported beneficiaries; not the Government. Therefore, the Secretary, in the context of an NSLI proceeding, is not an adverse party, as intended by Congress. “That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone a nonparty.” Kentucky v. Graham, 473 U.S. 159, 168, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (refusing to hold that a suit against a Government official in his or her personal capacity can lead to imposition of fee liability pursuant to 42 U.S.C. § 1988) (citing Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).
Additionally, EAJA
rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for developing or announcing more precise rules.... Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights.
H.R. Rep. No. 96-1418, at 10 (1980) (emphasis added). The italicized language demonstrates that it is unlikely that Congress intended for NSLI proceedings to be included under EAJA’s statutory umbrella. A claimant’s goal in an NSLI proceeding is solely to protect his or her own vested interest, i.e., entitlement to proceeds under the NSLI policy. There will not normally be any broadly reaching public policy implications because, as noted above, the Government’s interest in the matter is merely that of a disinterested stakeholder.[6] Should one claimant prevail over another purported beneficiary, it will not affect Government policy nor the public fisc. See In re Perry, 882 F.2d 534, 539-40 (1st Cir.1989) (noting that “petitioners’ suit did not — indeed, could not — assist in refining and formulating public policy, an important consideration in assessing EAJA’s *277 reach”) (comparing Boudin v. Thomas, 732 F.2d 1107, 1114 (2nd Cir.1984) (stating that Congress did not intend that EAJA apply to habeas petitions that are “dedicated to vindicating individual rights based on the Constitution rather than refining rules and policy”)).
Otherwise stated, the taxpayer is generally unaffected by which claimant ultimately prevails in an NSLI dispute because the remedy will be uniquely tailored to that individual claimant; i.e., an award of proceeds available under the policy. Conversely, the public fisc will be adversely affected should this Court extend EAJA to the NSLI proceeding context. This is so because taxpayer dollars will ultimately be spent funding litigation between two private parties whose outcome will solely affect their alleged and respective interests. Should an NSLI claimant obtain a remand at this Court, an award pursuant to EAJA will necessarily be implicated, regardless of the fact that the underlying issue or dispute involves the Secretary only in a nominal capacity.
III. THE SECRETARY’S ROLE IS ADJUDICATORY NOT ADVERSARIAL
If the Court were to hold that EAJA does not apply in this matter, it would not be alone in this interpretation. As noted above, in a dispute arising over NSLI proceeds, the Secretary is tasked with resolving any controversy that arises between alleged beneficiaries, and he must assign the proceeds accordingly. Thus, the Secretary’s role in this context is more akin to that of an adjudicator than an adversary and awarding EAJA fees in this case would be the equivalent of ordering a Federal district court judge to pay a party’s legal fees after a decision is reversed on appeal.
In Perry, the United States Court of Appeals for the First Circuit addressed the question of “whether a purely adjudicative governmental entity, like OSHRC [ (the Occupational Safety and Health Review Commission) ], might ever be held to suffer a fee award under EAJA.” 882 F.2d at 535. Recognizing “that the Secretary, through OSHA [ (the Occupational Safety and Health Administration) ] promulgates safety and health standards for businesses” and “it is the OSHRC ... which is given the task of ‘carrying out adjudicatory functions under [title 29],’ ” Perry, while distinguishable, is nonetheless instructive with regard to EAJA awards when the administrative body’s role is “purely adjudicative.” Id. at 536. The First Circuit observed that EAJA was designed to encourage parties to vindicate their rights against the Government, not other private parties. Id. at 539. The First Circuit then reasoned:
We are hard-pressed to find that this purpose was addressed in any way to unreasonable adjudicatory action; else-wise, we would expect Congress to have extended EAJA well beyond litigation to which the United States was a party. After all, if EAJA was designed to ameliorate adjudicators’ excesses, then reason dictates that private litigants battling with each other should be able to recover attorneys’ fees from a federal court or other adjudicative body whenever one of them successfully appeals an unreasonable order or mindless decision. Yet, even petitioners do not contend that the Act sweeps so broadly. The requirement of party status-that the civil action must be one “by or against the United States,” 28 U.S.C. § 2412(d)(1)(A) — is, we think, powerful evidence of an intent to exempt “pure” adjudicators from EAJA’s embrace.
Id. (emphasis in original). The First Circuit concluded:
[W]e have been able to find no clear indication of a congressional intent to *278 extend EAJA liability to purely adjudicative entities. Although the wording of the Act seems to leave the question open, the legislative purpose and history strongly suggest that Congress did not have adjudicatory functions in mind when enacting EAJA or when later amending it. And, any doubt must be resolved in favor of nonapplieability since courts are duty bound to construe stingily waivers of the federal government’s sovereign immunity.
Id. at 545.
In the instant case, the dispute resolved by the Court was the scope of the Secretary’s duty to assist purported NSLI beneficiaries under section 5103(a). Appellant Gordon won only a procedural victory; the Court’s merits decision did not get her NSLI proceeds. Rather, it merely instructed the Secretary to provide her with notice of how to defeat Ms. Samargin’s claim to the proceeds. Arguably, the Secretary will also have to provide Ms. Sa-margin with similar notice. See Gordon, 21 Vet.App. at 289 (Lance, J., dissenting). Thus, the scope of the majority opinion deals more with how the parties will be able to defeat each other’s claims on remand rather than with how to defeat a litigating position of the Government exercised through the Secretary. To the extent that the Secretary can be viewed as an “adjudicator” between competing claims for insurance proceeds, Perry weighs in favor of concluding that an award of EAJA fees and expenses in this context is inappropriate.
IV. SOVEREIGN IMMUNITY
The Government is immune from claims for attorneys fees, except to the extent that it has waived such immunity. Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). “Waivers of immunity must be ‘construed strictly in favor of the sovereign,’ McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951), and not ‘[enlarged] ... beyond what the language required.’” Id. at 685-86, 103 S.Ct. 3274 (quoting E. Transp. Co. v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927)). Unlike Richlin Security Service Co. v. Chertoff, where the Supreme Court noted that it did not need to resort to the sovereign immunity canon of construction absent any ambiguity, here both the statutory language and legislative history are sufficiently ambiguous that it would be appropriate for the Court to employ the sovereign immunity canon. — U.S. -, -, 128 S.Ct. 2007, 2019, 170 L.Ed.2d 960 (2008). Narrowly construing section 2412(d)(1)(A), the Court should conclude that an award pursuant to EAJA is not appropriate in the NSLI context. See Ardestani v. INS, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (“Once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to ‘assume the authority to narrow the waiver that Congress intended.’ ”) (quoting United States v. Kubrick, 444 U.S. 111, 118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)); Perry, 882 F.2d at 544 (“[Statutes which, like EAJA, constitute a surrender of federal sovereign immunity must be construed narrowly; consequently, the government’s immunity cannot be overridden except where a plain congressional intent to do so can be shown.”). As the dispute in this matter is not comparable to any in which EAJA fees are available, the Court must err against awarding public funds to fuel a purely private dispute that serves no public purpose.
V. EAJA WOULD NOT BE APPLICABLE IF THIS ACTION HAD BEEN BROUGHT IN FEDERAL DISTRICT COURT
One final strike against awarding EAJA fees in this matter is that the Government *279 would never have been liable for such fees if the case had been brought in Federal district court. “Unlike the traditional non-adversarial claims that the Secretary adjudicates, disputes over NSLI proceeds may also be brought in Federal district court, a distinctly adversarial forum.” Gordon, 21 Vet.App. at 286 (citing Young v. Derwinski, 1 Vet.App. 70, 72 (1990) (holding that section 1984 jurisdiction is not exclusive)); see also 38 U.S.C. § 1984(a).
It is not contested that attorney fees and costs are generally available in cases appealed to the Court where an appellant otherwise meets the requirements for such an award. See Federal Courts Administration Act of 1992 (FCAA), Pub.L. No. 102-572, 106 Stat. 4513 (Oct. 29, 1992) (amending section 2412(d)(2)(f) to add the Court to EAJA’s definition of “court”); see generally 38 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); Scarborough v. Principi, 541 U.S. 401, 407-08, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). Under 38 U.S.C. § 5904(d)(1), “[w]hen a claimant and an agent or attorney have entered into a fee agreement ..., the total fee payable to the agent or attorney may not exceed 20[%] of the total of any past-due benefits awarded on the basis of the claim.” Where such a fee agreement is entered, it “shall not prevent an award of fees and other expenses under section 2412(d).” FCAA § 506(c), 106 Stat. at 4513. However, “when an attorney receives fees under both a qualifying fee agreement and the EAJA for the same work, the EAJA fees go first to reimburse the client for what he or she had paid under the fee agreement.” Shaw v. Gober, 10 Vet.App. 498, 503 (1997) (citing Curtis v. Brown, 8 Vet.App. 104, 108-109 (1995)). It is clear from both the statutes and the caselaw interpreting them that Congress explicitly intended to make EAJA applicable in situations where fee agreements had been entered into pursuant to section 5904(d)(1).
Section 1984(g), in contrast, provides, in pertinent part, that the district court “shall determine and allow reasonable fees for the attorneys of the successful party or parties ... not to exceed 10[%] of the amount recovered and to be paid by the Department out of the payments to be made under the judgment.” No provision extends the EAJA umbrella to cover the provision of section 1984 as FCAA § 506(c) does in the case of an ordinary contingency fee agreement. There is also no caselaw interpreting or applying section 2412 in cases involving section 1984 in the district courts. Rather, it appears that the mechanism by which an attorney may be compensated in such situations is governed exclusively by section 1984(g). Section 1984(g) is not a fee shifting statute, in that it does not authorize the prevailing party to recover fees from the losing party. See Gisbrecht v. Barnhart, 535 U.S. 789, 803 n. 12, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). Rather, “it authorizes fees payable from the successful party’s recovery.” Id. at 802, 122 S.Ct. 1817. Accordingly, the decision of the majority creates a nonsensical situation where the Government’s potential liability for attorney fees depends on the forum chosen even though the claim itself is the same.[7]
*280 This leads me to the belief that the effect of this holding may be to end the adjudication of such claims in the VA system. Under 38 U.S.C. § 1984(a), the Secretary has the power to remove such actions to Federal district court through a bill of interpleader once it becomes apparent that there is a dispute over NSLI proceeds. By exercising this power, the Secretary can — in effect — recapture the sovereign immunity that the majority ignores and free himself from the ethical minefield of being required to simultaneously advise both sides as to how to defeat each other’s claims before acting as a neutral adjudicator. See Gordon, 21 Vet.App. at 289 (Lance, J., dissenting); cf. ABA Model Rules of Prof 1 Conduct R. 1.7 (2007) (Conflict of Interest: Current Clients), R. 1.8 (2007) (Conflict of Interest: Current Clients: Specific Rules); ABA Model Code op Judioial Conduct Canon 3 (“A Judge Shall Perform the Duties of a Judicial Office Impartially and Diligently.”). Accordingly, the majority’s attempt to awkwardly graft nonadversarial rules— both on the merits and the fee proceeding — onto a proceeding that is inherently adversarial may result in all these matters being driven to the adversarial forum better suited for actions where the Secretary is merely a stakeholder.
VI. CONCLUSION
In sum, it is clear, based on the language of § 2412(d)(1)(A), the legislative history surrounding its enactment, and the fee provision governing suits on insurance brought pursuant to section 1984, that EAJA was not intended to apply to attorneys fees and costs stemming from administrative adjudications over NSLI proceeds. Simply stated, the public fisc is not a treasure chest to be used to fund purely private litigation in which the Government claims no stake. Accordingly, I must dissent from the majority’s conclusion that EAJA fees may be awarded in this case.

. I would also note that the McCarran-Fergu-son Act provides that "the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.” 15 U.S.C. § 1011. In passing this Act, Congress noted that "[fjrom its beginning, the business of insurance has been regarded as a local matter, to be subject to and regulated by the several States.” Report of the House Judiciary Committee on the McCarran-Ferguson Act, S. 340, Feb. 13, 1945, 1945 U.S.Code Congressional Service, p. 670. In essence, Congress intended that the Federal Government take a "hands off” approach to the insurance business declaring that "the continued regulation and taxation by the several States of the business of insurance is in the public interest.” Id. at 672. The fact that Congress has explicitly kept the Federal Government out of life insurance regulation to the extent possible supports the proposition that there is little, if any, public policy to be refined by NSLI litigation.

. I also note that it makes very little sense for Congress to provide that fees are limited to 10 percent of the proceeds if the case is brought in Federal district court, but that an attorney can receive 20 percent of the proceeds if the matter is litigated through VA. This incongruity suggests that the Court was incorrect in its decision that VA has jurisdiction over such disputes. See Young, supra. If Congress had truly intended VA to exercise concurrent jurisdiction over NSLI claims, it is highly probable that it would have gone to some effort to harmonize the fee provisions so that beneficiaries who choose to use the VA system would not end up paying more to their attorneys than those who proceed in Federal dis *280 trict court. Nonetheless, while jurisdiction may be raised at any time, Fugere v. Derwinski, 972 F.2d 331, 334 n. 5 (Fed.Cir.1992), Young cannot be overturned by another panel of this Court. Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992) (panel decisions constitute binding precedent unless overturned by en banc opinion of this Court or by decision of the U.S. Court of Appeals for the Federal Circuit or U.S. Supreme Court). Accordingly, further discussion of this issue is beyond the scope of the issues currently before the panel.